LARSON et al., Appellants

v.

ALL-AMERICAN TRANSPORT, INC., Defendants and Respondents

and

ARENDS et al., Intervenors and Respondents

(164 N.W.2d 603)

(File No. 10433. Opinion filed January 17, 1969)

---

**C. L. Anderson,** Sioux Falls, for plaintiffs and appellants.

**May, Boe & Johnson,** Sioux Falls, for defendant and respondent All-American Transport, Inc.

**Smith & Rosene,** Jefferson, for defendant and respondent Local Union 749.

**Robert L. O'Connor,** Sioux Falls, for intervenors and respondents.

RENTTO, Judge.

This litigation is concerned with the seniority rights of the plaintiffs and the intervenors. They are employees of the defendant All-American Transport, Inc., which is engaged in the trucking business and was formerly operated under the name of Wilson Storage and Transfer Company. The employees are all members of the defendant Local Union 749 which is an affiliate of the defendant International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. The trial court upheld the position of the intervenors. From its judgment to this effect the plaintiffs appeal.

The Central States Area Over-The-Road-Motor Freight Agreement covering drivers employed by private, common and contract carriers, was negotiated by the International for the unions involved with a number of trucking firms in the designated area, including the defendant carrier. The members of Local 749 on April 24, 1961 voted to accept this as their collective bargaining contract. One of its provisions, Art. 5, § 1, provided that:

"Terminal seniority, as measured by length of service at such terminal, shall prevail, excepting in those instances where the Employers, the Unions involved, and the Central States Drivers Council agree to the contrary."

This gave to the employees here involved terminal seniority measured by the length of service at their respective terminals.

Early in 1962 the employer, with the approval of the Union, changed its operation by merging several terminals. As a result of this the seven employees who are plaintiffs herein were moved from outside terminals to the Sioux Falls terminal. The Central States Area contract provided in Art. 5, § 6(b) 2, that in such circumstances the transferred employees would go to the bottom of the seniority board and have the right of job selection only in accordance with their seniority at such terminal, but for layoff purposes, and other contract benefits they would exercise company seniority.

Apparently at this juncture there was discussion and a difference of opinion among the employees as to the seniority of the transferred employees. The employer advised them of its intention to strictly comply with the terms of the applicable contract provision, Art. 5, § 6(b) 2, and that it interpreted such provision to require that the transferred employees be placed at the bottom of the seniority list then existing at its Sioux Falls terminal.

On the complaint of some of these transferred employees a meeting between the employer and various union representatives was held in St. Paul, Minnesota, on August 28, 1962. This group effected a change in the contract to provide for company rather than terminal seniority for the transferred employees. Such change was later approved by the Central States Area Committee Drivers Council as no dispute was apparent from the face of the agreement presented to it.

The twenty-two employees who appear in this litigation as intervenors were unhappy with this result. By it they lost seniority. To protect themselves they commenced an action in the Circuit Court, Second Judicial Circuit, asking that the seniority

rights they had before the change made by the St. Paul meeting be restored to them. Such action by agreement of the parties was stayed while they sought relief through the grievance procedures of their Over-The-Road agreement. Their grievance, in which their union representative joined, was grounded on the claim that their interests were not fairly presented at the St. Paul meeting by the union representative. The hearing on this grievance resulted in a restoration of their seniority rights by the Central States Joint Committee, which result was adhered to upon rehearing. The effect of this was to set aside the change made at the St. Paul meeting.

After the St. Paul change was nullified by the grievance procedure, the employees who had been transferred into Sioux Falls brought this action for a writ of mandamus against the employer and the union seeking restoration of the seniority rights given them by the St. Paul agreement. The other employees were not made parties. Both defendants sought dismissal of the action claiming it did not state facts sufficient to justify relief, but neither challenged directly the validity of the St. Paul agreement.

After it was tried and the court had issued its memorandum of decision, but before findings of fact and conclusions of law were made and entered, the other group of employees sought to have the lawsuit they had previously started merged with this action, or in the alternative, that they be permitted to intervene in this action and challenge the propriety of the contract change made by the St. Paul meeting. The latter request was granted. In the trial court plaintiffs' only objection to the application for intervention was that it was not timely. That complaint is renewed on appeal.

■ ■ In RCP 24, it is provided that an application to intervene must be timely made. Whether such requirement is satisfied is committed to the sound discretion of the trial court. In its determination of this matter the time when the application is made is an element to be considered. But as indicated in the rule, the most important factor is whether the delay in moving for intervention will unduly delay or prejudice the adjudica-

tion of the rights of the original parties. 2 Barron & Holtzoff (Wright) Federal Practice & Procedure—Rules Edition, § 594. In granting leave to intervene the court recognized that the application could have been made somewhat earlier, but felt that the intervention would not unduly delay or prejudice adjudication of the rights of the original parties. We are unable to say that the court in so holding abused the considerable discretion which it has in determining such matters. The intervenors had not had their day in court and the issue which they tendered was determinative of the litigation. See also RCP 42(a).

■ The seniority rights of these two competing groups of employees is dependent upon the validity of the St. Paul agreement. Plaintiffs base their claim on its validity while the intervenors rest theirs on its invalidity. The court held the St. Paul agreement to be a nullity because the intervenors were denied the right of fair representation in its formulation. This determination the plaintiffs challenge on this appeal and cite state contract law to support their position. Since this is an action concerning a collective bargaining agreement the controlling substantive law is federal law, even though the action is brought in a state court. Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370. See Labor Management Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185(a).

Concerning that meeting these are the facts found by the court: The intervenors had no notice of it or that their seniority rights would be there involved. The matter had not been discussed or voted upon at any meeting of their union prior to the St. Paul meeting. The union representative at the meeting had no authority to bargain away their seniority rights and knew that he was acting contrary to the interests and wishes of a majority of his union. He also knew that the intervenors were entitled to be heard before any change was made affecting their seniority. From our study of this record we are satisfied that these findings have abundant evidentiary support.

■ As prescribed in Art. 5, § 6(b) 2, of the Central States Area contract the employees who were transferred into Sioux Falls had seniority in job selection limited to the time they had

been at that terminal. By Art. 5, § 1, controversies over the seniority standing of employees are subject to joint grievance procedures. Whether this procedure was followed in convening the St. Paul meeting is not entirely clear in this record. Nevertheless, because the interest and position of the intervenors were not fairly represented at that meeting the agreement resulting therefrom is of no force or effect.

 A union as an exclusive bargaining agent becomes the agent of all the employees and must represent the interest of all of them fairly and impartially. The antagonistic nature of these interests requires this. Its powers are always subject to complete good faith and honesty of purpose in the exercise of its discretion. If the representation does not measure up to this standard the resulting agreement fails. Humphrey v. Moore, supra. Consequently, the change in seniority made by the St. Paul meeting, in view of the court's finding concerning it, is not binding on the intervenors.

Affirmed.

All the Judges concur.