In the Matter of the Application of UN-
ION CARBIDE CORPORATION for an
Exploration Permit in Craven Canyon,
Fall River County.

Dr. James C. ZANDER, Deborah Grosser,
Bruce Bornstein, Margaret Bornstein,
Ron Eastep, and The Black Hills Alli-
ance, Appellants,

v.

SOUTH DAKOTA STATE CONSERVA-
TION COMMISSION, South Dakota Di-
vision of Conservation, and Union Car-
bide Corporation, Appellees.

No. 13104.

Supreme Court of South Dakota.

Argued Jan. 13, 1981.

Decided July 22, 1981.

Andrew B. Reid and Phyllis R. Girouard, Piedmont, for appellants.

Roxanne Giedd, Asst. Atty. Gen., Pierre, for appellee State of South Dakota; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Thomas J. Welk of Boyce, Murphy, Mc Dowell & Greenfield, Sioux Falls, for appellee Union Carbide Corp.

MORGAN, Justice.

This appeal stems from an administrative action taken by the South Dakota Conservation Commission (Commission) granting an exploration permit to Union Carbide Corporation (Union Carbide) to explore for U-308 (uranium ore) in Craven Canyon in Fall River County, South Dakota. Originally, the appeal was filed in the circuit court for Fall River County but venue was changed, over appellants' objections, to the circuit court for Hughes County upon motion by appellees. Thereafter, the Sixth Circuit Court for Hughes County entered judgment affirming Commission's action. We reverse and remand.

The issues before us on this appeal relate to procedural actions taken by Commission under the provisions of SDCL ch. 1–26, the South Dakota Administrative Procedures Act (SDAPA), and Chapter 12:04:01 of Commission's rules (ARSD). Commission is a nine-member body created pursuant to SDCL 38–7–3 with a chairman designated by Commission annually. Commission is administered under the direction and supervision of the Division of Conservation of the Department of Agriculture (Division), and the director thereof (Director). SDCL 38–7–3.1. Commission, however, retains quasi-judicial, quasi-legislative and other functions which are exercised independently of Director. Id.

Initially, Union Carbide filed its application on August 8, 1979. Additional filings of supplemental information required by statute and Commission rules were made as late as August 13, 1979.

A notice of final Commission action was mailed to the Hot Springs Star, a legal weekly newspaper in Hot Springs, South Dakota, on August 20, 1979. On August 27, 1979, a written notice of hearing was sent to Union Carbide. On August 29, 1979, the Star published the notice. Both notices set

the final Commission action for September 6, 1979, in Pierre, South Dakota.

On August 31, 1979, counsel for appellants first reviewed a portion of Commission file on Union Carbide's permit application. They were not, however, allowed to view the detailed Forest Service Environmental Assessment Report or the project maps, which were withheld by Commission as confidential papers.

Shortly before the meeting began on September 6, 1979, appellants' counsel filed and served upon Division several petitions including a petition to initiate a contested case proceeding under Commission rules, or in the alternative, to intervene, and a petition for declaratory ruling. Appellants served Commission and Union Carbide with the papers at the commencement of the meeting. After some rather confusing discussion of the best procedural step to take, including the possibility of appointing a hearing examiner, Commission placed the matter on the table over the noon recess. When the hearing resumed the issue of timeliness of the filings was raised. Commission, by its own motion, ruled that they were not timely and proceeded to hearing on the application. Counsel for appellants was permitted some degree of cross-examination. The meeting terminated when one of Commission's members called for the question. After the motion for question was passed debate was stopped. A vote was then taken on whether to grant the permit and the motion carried.

Appellants immediately served appellees with a notice of appeal that was venued in the circuit court for Hughes County. They appealed the denial of their petition to intervene and all other related petitions filed. The circuit court dismissed the appeal for the reason that it was not from a final agency action. The dismissal was conditioned as follows:

That the Black Hills Alliance is a party aggrieved and would have a right to file an appeal to any action that they feel aggrieved by as a result of action by the Conservation Commission;

Further, that the Commission is directed to serve a copy of any decision it reaches upon counsel for appellants;

Further, that counsel for appellants are authorized, if they desire, to file proposed Findings of Fact and Conclusions of Law for consideration by the Commission.

No appeal from this order was taken by any of the parties.

Appellants filed proposed findings of fact and conclusions of law with Commission. At its October 4, 1979, meeting, however, Commission rejected appellants' findings of fact and conclusions of law. After adopting other findings of fact and conclusions of law, Commission ordered issuance of the temporary permit to Union Carbide.

Appellants again filed an appeal in circuit court, this time from Commission's final action. This appeal was filed in Fall River County. Union Carbide filed an application for change of venue to Hughes County which the circuit court granted. The Sixth Judicial Circuit Court, Hughes County, heard arguments on the merits of the appeal and issued a memorandum decision. It also issued an order and judgment stating,

[T]hat the State Conservation Commission's decision to deny Appellant's Petition to initiate a contested case, or in the alternative, to intervene, Petition for declaratory ruling, and various other Motions, and, the Commission's decision to grant Union Carbide Corporation on [sic] exploration permit, are affirmed for the grounds and reasons stated in my Memorandum Decision of March 18, 1980.

■ This court reviews "the record of the administrative agency in the same manner as the circuit court, unaided by any presumption that the lower court's decision is correct." *Matter of South Lincoln Rural Water System,* 295 N.W.2d 743, 745 (S.D. 1980).

The reviewing court must first decide whether the agency acted within the scope of its statutory authority. If it has, the court must then determine whether its actual choice was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." The

final inquiry is whether the agency followed the necessary procedural requirements. During the course of this inquiry, the reviewing court must be satisfied that the agency not only employed procedures which conform to the procedural requirements of the Administrative Procedure Act, but which also conform to the agency's own internal procedures.

*Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 713 (8th Cir. 1979) (citations omitted). "[J]udicial review of an administrative decision is limited in scope. Such a review is confined to a review of the record made at the administrative level." *South Dakota v. Volpe*, 353 F.Supp. 335, 338–339 (D.S.D.1973).

Of the several issues raised by appellants we find two[1] to be crucial: (1) Was the September 6, 1979, hearing a contested case without a filing of the petition for contested case under ARSD 12:04:06:08? We hold that it was. (2) Did appellants make timely application for intervention? We hold that they did.

█ Appellants contend that under Commission's rules a petition for contested case under ARSD 12:04:06:08 is required, and that Division, having failed to file such a petition, Commission was without authority to act on the application at the September 6, 1979, hearing. Commission concluded that it had jurisdiction, that the hearing was a license proceeding and that the provisions of SDCL ch. 1–26 concerning contested cases had been complied with.

SDCL 1–26–1(2) defines "contested case" to mean "a proceeding including but not restricted to ... licensing, in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing[.]" Licensing is the administrative process of granting a license. SDCL 1–26–1(4). SDCL 1–26–1(3) defines "license" to include "the whole or part of any agency permit

... required by law[.]" "When the grant ... of a license is required to be preceded by notice and opportunity for hearing, *or* an applicant, a party or an agency requests a hearing, the provisions of this chapter concerning contested cases apply." SDCL 1–26–27 (emphasis added).

In essence, ARSD 12:04:06:08 provides that, in order for any interested person to initiate a contested case proceeding, a written petition shall be filed in the office of Director. Director must issue notice of contested cases and mail it to the parties. ARSD 12:04:06:01.

We first note that Commission rules cannot expand the scope of the statutes.[2] Furthermore, we have to read the rules to give maximum effect to all provisions whenever possible.[3] The trial court upheld Commission's determination that the contested case provisions had been complied with under the SDAPA and Commission's rules noting that ARSD 12:04:06:01 provides that mailing of a petition for contested case (under ARSD 12:04:06:08) and order for hearing is sufficient notice *in lieu* of the notice by Director. It further held that ARSD 12:04:06:08 is to be used by parties seeking intervention and ARSD 12:04:06:01 to be used by Director when no intervention is sought.

We agree that the proceeding was properly before Commission as a contested case but we disagree with the trial court's reasoning on the use of the petition under ARSD 12:04:06:08. This rule simply provides a vehicle by which any person can petition to bring before Commission some matter which is not by law a contested case. The "*in lieu*" provision of ARSD 12:04:06:01 merely authorizes the use of the petition and the order setting the matter for hearing as substitute notice to parties of the case initiated by the petition.

In no event do the rules change the basic statutory determination that licensing hear-

---

1. The substantive issue raised by appellants was not decided below because of Commission's denial of intervention, so it is not properly before us at this time.

2. *State, Div. of Human Rights v. Prudential Ins.*, 273 N.W.2d 111 (S.D.1978).

3. *Hot Springs, Etc. v. Fall River Landowners*, 262 N.W.2d 33 (S.D.1978).

ings which are required to be preceded by notice and opportunity for hearing are contested cases. The notice given to Union Carbide, the party of record, and the notice by publication were adequate to satisfy the notice requirements to give Commission jurisdiction to proceed to hearing.

Appellants next assert that Commission could not hold a contested case hearing without adversary parties. Appellants cite no authority for this proposition. They seek to equate "contested case" with "trial." This is a myopic point of view and simply not correct.

■ Numerous cases hold and the commentaries of the drafters of the Model Administrative Procedures Act of 1961 state that "contested case" is synonymous with "adjudication." Administrative action is, " '[A]judicatory in character if it is particular and immediate, rather than, as in the case of legislative or rule making action, general and future in effect. . . .' " *Wood County Bank v. Camp*, 348 F.Supp. 1321, 1325 (D.D.C.1972), vacated and remanded without opinion, 489 F.2d 1273 (D.C.App. 1973).

The District of Columbia Appellate Court in construing the District of Columbia Administrative Procedures Act (DCAPA), which in appropriate particulars is identical with the SDAPA, stated:

> DCAPA, as does the Federal A.P.A., provides for basically two types of proceedings before administrative agencies— adjudicatory proceedings ("contested case") and rulemaking proceedings. The *sine qua non* of an adjudicatory proceeding is the individual, particular and immediate nature of the action as distinguished from the general and future nature of the rulemaking process.

*Debruhl v. Dist. of Columbia Hackers' License*, 384 A.2d 421, 425 (D.C.App.1978) (citation omitted).

The principal manifestation of a "contested case" is its character as a quasi-judicial process based upon particular facts and information, and immediately affecting the interests of specific parties in the proceeding. Consequently, when a proceeding before an agency assumes primarily a quasi-judicial nature, the proceeding is governed by the "contested case" provision of the APA.

*Citizens Ass'n of Georgetown, Inc. v. Washington*, 291 A.2d 699, 703–704 (D.C.App. 1972) (citation omitted).

In *Valley State Bank of Canton v. Farmers State Bank*, 87 S.D. 614, 621, 213 N.W.2d 459, 463 (1973), this court noted that,

> [t]he phrase "required by law," found in SDCL 1–26–1(2), which establishes when the " 'Contested case' " hearing is necessary, includes constitutional requirements of fair play, due process and *agency rules*, as well as the requirements of statutory law. It must then be concluded that this was a " 'Contested case' " because the Banking Commission, by its own procedure establishing the rules which required the adjudicative hearing, sought to determine some of the "legal rights, duties, or privileges of a party" herein, the respondent Farmers State Bank of Canton. (emphasis in original).

Finally, we note the fact that the drafters of the Model Act intended "contested case" to be synonymous with "adjudication" in the Federal APA, except for one important distinction. The commentary on § 1(2), the definition of "contested case," notes,

> The term "contested case" is used in the Model Act, instead of the word "adjudication" as found in the Federal Act, to avoid the possible confusion in terminology that might result from the fact that ratemaking under the Federal Act is classified as "rule making" with special procedures applicable to it, whereas under the Model Act it is desired to apply the contested case procedures to ratemaking.

Model State Administrative Procedure Act, § 1 at 373 (14 West Uniform Law Ann. 1961) (Commissioners Comment).

■ We hold therefore that the term "contested case" as used in SDCL 1–26–1(2) means an adjudicatory hearing as opposed to a quasi-legislative or rule making proceeding.

■ The requirements of the law then are that where there are adversary parties they are accorded procedural rights that are consonant with due process. "The constitutional guaranty of due process of law applies to, and must be observed in, administrative as well as judicial proceedings, particularly where such proceedings are specifically classified as judicial or quasi-judicial in nature[.]" 2 Am.Jur.2d Administrative Law § 351 (1962). Even prior to adoption of the SDAPA this court in *Caldwell v. Pierson*, 37 S.D. 546, 554, 159 N.W. 124, 126 (1916), held, "Due process of law applies to administrative and executive action by which one may be deprived of property as well and just the same as it does to judicial action."

The very terms of the SDAPA, SDCL 1–26–18, provides that,

Opportunity shall be afforded all parties to respond and present evidence on issues of fact and argument on issues of law or policy. A party to a contested case proceeding may appear in person or by counsel, or both, may be present during the giving of all evidence, may have reasonable opportunity to inspect all documentary evidence, may examine and cross-examine witnesses, may present evidence in support of his interest, and may have subpoenas issued to compel attendance of witnesses and production of evidence in his behalf.

The statutes provide generally for appointment of a hearing examiner, rules of evidence, oath, subpoena power and deposition evidence. That such procedure is at least quasi-judicial in nature is beyond dispute. We therefore hold that a party thereto is entitled to due process.

■ In the licensing cases where no one appears to contest the license application Commission is not precluded from proceeding with the hearing and granting of the license. To hold otherwise would prevent the agency from issuing licenses in the many cases where there are no opponents. Clearly, the SDAPA does not contemplate such an impasse.

■ We hold that from the outset this proceeding before Commission was a contested case without the necessity for anyone to request such a hearing or adversary parties.

The next question is whether appellants were parties, or in the alternative, were entitled to be parties to the proceedings, but this question appears to be removed from our consideration inasmuch as Judge Miller, in ruling on the abortive appeal from the September 6, 1980, meeting, determined that appellants were aggrieved parties to the proceedings. This determination was not appealed and would therefore be binding on appellees in this proceeding.

Neither do the appellees in their brief or in oral argument contend that the appellants were not a party other than to challenge their standing to appeal on the merits of Commission's findings because the petition to intervene was denied as untimely. But if appellants were parties in law and in fact the petition to intervene was superfluous and the ruling denying it was of no effect. We then extirpate the superfluous motion and the ruling, and look to the question whether appellants had a fair opportunity to participate at the hearing before Commission. From our review of the record we hold that they did not.

Division in its brief admits that the hearing was in the contested-case category and suggests that appellants should have filed a petition to intervene under ARSD 12:04:06:10, which requires filing a petition that includes a statement of whether the petitioner desires to support or contest Director's recommendation on a permit application. The rule requires that the petition be mailed to Director, Commission members, and other parties of record. The problem with that rule is that it presumes that Director's recommendation is a matter of public knowledge prior to a hearing so that a petitioner can agree or disagree with it. Nor does the rule set any specific deadline for the mailing of the petition. Presumably, if petitioners had mailed the petitions so that they were delivered on the day of the hearing, Division would have no objec-

tion. No more time to prepare, but no grounds to object. That is ludicrous!

■ We are also aware that the only public notice of this proceeding that appears of record in Commission proceedings was a notice by publication on August 29, 1979, only seven days before the hearing date and that notice. Such as it was, clearly this notice was not in conformity with the notice of contested case mandated by statute and Commission rule. Furthermore, that seven-day notice period included a three-day Labor Day weekend holiday when counsel for Division and Commission members must have been aware there would be no mail delivery.

We next consider the issue whether the appellants had timely petitioned to intervene as provided by statute and rules of Commission. SDCL 1–26–17.1 provides that, "[a] person who is not an original party to a contested case and where pecuniary interests would be directly and immediately affected by the agency's order . . . may become a party to the hearing by intervention, if timely application therefor is made." SDCL 34A–10–2 provides that,

Whenever . . . licensing or other proceedings . . . are available by law, the agency . . . may permit . . . any person . . . association . . . to intervene as a party on the filing of a pleading asserting that the proceeding . . . involves conduct which has the effect of polluting, impairing or destroying the air, water or other natural resources or the public trust therein.

Commission Rule, ARSD 12:04:06:10, provides that,

Any person who desires to intervene in a contested case proceeding on a permit application shall file a petition . . . [including] a statement of whether petitioner desires to support or contest the directors recommendation on a permit application, filed with the commission. A petition to intervene shall be granted and the intervenor allowed to participate when his interest may not be adequately represented by other parties. A petition to intervene shall be mailed to the director, commission members and other parties of record.

The pertinent findings of fact entered by Commission are as follows:

15. That the petitions and motions that were filed by Attorneys Girouard and Reid, were provided to the Director of the Division of Conservation and the attorneys representing the Commission staff only shortly before the hearing, but not to the attorney representing Union Carbide prior to the commencement of the hearing. The members of the Commission were not served until the commencement of the hearing.

16. That the presentation of the petitions and motions by Attorneys Girouard and Reid presented a great number of issues which neither the State nor Union Carbide had prepared themselves to address that day at the hearing.

17. That a rational decision on the numerous issues of fact and law raised by the petitions and motions filed by Attorneys Girouard and Reid could not have been made because of the lack of notice to the Commission and to Union Carbide.

Upon these findings Commission entered Conclusion of Law 4, which reads as follows:

4. That the petitions and motions filed by Attorneys Girouard and Reid on behalf of the Black Hills Alliance and Bruce Bornstein, Margaret Bornstein, Ron Eastep, Dr. James C. Zander and Deborah Grosser were untimely filed and should be denied consideration by the Commission.

The circuit court, after reviewing the administrative record, agreed with the conclusion of Commission that the appellants were untimely. We disagree.

■ On the issue of timeliness, the criteria for intervention that is applicable in judicial proceedings is likewise applicable in administrative proceedings. None of the briefs or arguments of any of the parties sought to distinguish between intervention of right, SDCL 15–6–24(a), and permissive intervention, SDCL 15–6–24(b). While appellants stated that theirs was an interven-

tion of right, they failed to support the statement with authority or argument. Therefore we will save that issue for a case where it is briefed and argued and proceed to consider this case as a permissive intervention under SDCL 15–6–24(b).[4] That statute provides, in pertinent part, that,

Upon timely application anyone may be permitted to intervene in an action when an applicant's claim . . . and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

This statute was discussed in *Larson v. All-American Transport, Inc.*, 83 S.D. 622, 626, 164 N.W.2d 603, 605–606 (1969), citing 2 Barron and Holtzoff (Wright) Federal Practice & Procedure—Rules Edition, § 594, where this court said,

In [SDCL 15–6–24(b)] it is provided that an application to intervene must be timely made. Whether such requirement is satisfied is committed to the sound discretion of the trial court. In its determination of this matter the time when the application is made is an element to be considered. But as indicated in the rule, the most important factor is whether the delay in moving for intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

In *Larson* the trial court had granted leave to intervene, having found that, while the application could have been somewhat earlier, the intervention would not unduly delay or prejudice adjudication of the rights of the original parties. In this case neither Commission nor the trial court made any finding whatsoever of undue delay or prejudice if intervention had been allowed.

■■■ The untimely aspect of appellants' filing appears to be their failure to file and mail the petition before the hearing. The trial court correctly noted that ARSD 12:04:06:10, which requires such filing and mailing, does not mention any timeliness requirement. Presumably, if the application had been filed and mailed the day before the hearing they would have been timely, although it is doubtful Commission or parties would have received them any earlier than they did by appellants' method. Considering the nature and complexity of the case, it is probable that there would have been some delay had the application been filed and mailed on the day the notice was published, since Director opted to give the minimum public notice under Commission rules.[5] Director had ample knowledge of appellants' interest to anticipate their petition to intervene. Considering these aspects of the record, we hold that Commission abused its discretion by denying appellants' petition to intervene.

Finally, we consider the issue of the change of venue from Fall River County, where the appellant chose to file its appeal, to Hughes County. SDCL 1–26–31.1 provides that venue of an appeal from an administrative agency shall be: "If the appellant is a resident of this state, to the circuit court for the county of his residence or to the circuit court for Hughes county, *as he may elect* [.]" (emphasis added).

Upon appellee's motion, pursuant to SDCL 1–26–31.3, venue was transferred from Fall River County to Hughes County. This provision permits a change in venue "for convenience of witnesses and production of evidence upon good cause shown[.]" The general term "upon good cause shown" relates back to and is limited by the particular clause, "for convenience of witnesses and production of evidence." See *State ex rel. Johnson v. Sunshine Food Markets*, 84 S.D. 345, 171 N.W.2d 508 (1969).

---

4. Generally, under the cases, courts are more likely to deny intervention as untimely where it is permissive than they would where it is a matter of right.

5. Commission Rule ARSD 12:04:03:02 requires that publication of the notice of final Commission action shall be made not later than seven days before the date of the meeting and not more than thirty days in advance of it.

Although a change of venue is within the trial court's discretion, it is subject to challenge for abuse of that discretion. See *Anderson v. Lale*, 88 S.D. 111, 216 N.W.2d 152 (1974). In exercising this discretion, the trial court must make a sufficient factual showing of the grounds expressed in SDCL 1–26–31.3. See *Putnam Ranches v. O'Neill Production Credit*, 271 N.W.2d 856 (S.D.1978). The convenience of attorneys for the State and Union Carbide and the location of a prior intermediate appeal, dismissed as premature, are irrelevant to a change of venue pursuant to SDCL 1–26–31.3. Although the location of evidence is relevant, on the instant facts, it amounts to nothing more than the easily transferrable records of Commission's proceedings. Clearly, the change of venue did not comply with SDCL 1–26–31.3. The trial court abused its discretion in granting the change of venue.

While we could have simply remanded the case for a new hearing before the circuit court of Fall River County, that probably would not have resulted in a cure of the basic procedural defect at Commission level that we have pointed out. Therefore, in the interest of judicial economy and to avoid further delay, we have elected to pass over the appellate defect and deal with the agency defect.

Accordingly, we reverse the decision of the trial court of Hughes County and remand the case with instructions to vacate its judgment and to remand the case to Commission with direction to accept the petition of appellants to intervene in the proceedings and to vacate their findings of fact, conclusions of law and order granting the exploration permit to Union Carbide and to schedule a new hearing in compliance with the contested case provisions of SDAPA and the rules of Commission.

All the Justices concur.