#28331, #28332, #28333-dismiss-PER CURIAM
**2018 S.D. 44**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF PUC DOCKET
HP 14-0001, ORDER ACCEPTING
CERTIFICATION OF PERMIT ISSUED
IN DOCKET HP 09-001 TO
CONSTRUCT THE KEYSTONE XL
PIPELINE.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN L. BROWN
Judge

* * * *

TRACEY ANN ZEPHIER of                          Attorneys for appellant
Fredericks Peebles & Morgan, LLP               Cheyenne River Sioux Tribe
Rapid City, South Dakota                       #28331.

THOMASINA REAL BIRD
JENNIFER S. BAKER of
Fredericks Peebles & Morgan, LLP               Attorneys for appellant
Louisville, Colorado                           Yankton Sioux Tribe #28332.

BRUCE ELLISON
Rapid City, South Dakota

and

ROBIN S. MARTINEZ of
The Martinez Law Firm, LLC                     Attorneys for appellant Dakota
Kansas City, Missouri                          Rural Action #28333.

* * * *

ARGUED ON APRIL 17, 2018
OPINION FILED **06/13/18**

\* \* \* \*

ADAM de HUECK
Pierre, South Dakota

Attorneys for appellee
Public Utilities Commission.

JAMES E. MOORE of
Woods Fuller Shultz & Smith P.C.
Sioux Falls, South Dakota

and

WILLIAM G. TAYLOR of
Taylor Law Firm
Sioux Falls, South Dakota

Attorneys for appellee Trans-
Canada Keystone Pipeline.

#28331, #28332, #28333

PER CURIAM

[¶1.]        TransCanada Keystone Pipeline LP (TransCanada) applied to the South Dakota Public Utilities Commission (the Commission) for a permit to construct the Keystone XL Pipeline in South Dakota.  Following a contested proceeding, the Commission granted the permit subject to 50 conditions.  None of the parties in that proceeding—including Dakota Rural Action, a party to the current appeal—appealed the order issuing a permit.  Because TransCanada was unable to commence physical construction within four years, it subsequently certified that it continued to meet the permit conditions as required by SDCL 49-41B-27.  Upon receipt of that certification, the Commission opened a docket, allowed the intervention of numerous parties, conducted an evidentiary hearing, and ultimately issued an order accepting the certification.  The Cheyenne River Sioux Tribe, the Yankton Sioux Tribe, and Dakota Rural Action (collectively, "Appellants") each appealed the Commission's decision to circuit court, which affirmed.  On appeal to this Court, Appellants argue that the Commission and the circuit court committed numerous errors.  We consolidated the appeals, and because the circuit court lacked jurisdiction to hear the appeals, we do not reach the parties' arguments.  Therefore, we vacate the circuit court's decision and dismiss the appeal.

## Facts and Procedural History

[¶2.]        In 2008, TransCanada announced its plan to construct the Keystone XL Pipeline.  The Keystone XL Pipeline would connect to existing segments of the Keystone Pipeline system, which carries tar-sands crude oil from Alberta, Canada, to delivery points in Oklahoma and Texas.  The proposal included placing a

-1-

36-inch-diameter steel pipe capable of transporting up to 900,000 barrels of oil per day. The South Dakota portion of the project would begin at the Montana border and exit into Nebraska. The pipeline would extend 314 miles, crossing portions of Harding, Butte, Perkins, Meade, Pennington, Haakon, Jones, Lyman, and Tripp counties.

[¶3.] On March 12, 2009, TransCanada filed an application with the Commission for a construction permit pursuant to SDCL chapter 49-41B, the South Dakota Energy Facility Permit Act. The Commission opened Docket HP09-001, and on April 6, the Commission issued a notice of application, an order for and notice of public-input hearings, and a notice of opportunity to apply for party status. The Commission held two public hearings on April 27 and a third on April 28, where individuals presented comments and questions at the hearings. In May and June, the Commission granted party status to Dakota Rural Action and fourteen other entities and individuals. Following discovery, the Commission conducted a three-day contested-case hearing beginning November 2, 2009, at which TransCanada, Dakota Rural Action, and Commission staff appeared. The Cheyenne River Sioux Tribe and the Yankton Sioux Tribe, appellants in the present case, were not parties.

[¶4.] On February 18, 2010, the Commission voted to grant the permit subject to 50 conditions,[1] including that "Keystone shall comply with all applicable laws and regulations in its construction and operation of the Project" and that "Keystone shall obtain and shall thereafter comply with all applicable federal, state

---

1. Many of the 50 conditions also contain sub-conditions, totaling 107 separate conditions.

and local permits, including but not limited to: [a] Presidential Permit from the United States Department of State[.]"  The project required a presidential permit because the pipeline emanated from Canada and crossed an international border.  TransCanada's application for a presidential permit, filed in 2008, was still pending at the time of the permit hearing.  On June 29, 2010, the Commission issued an amended final decision and order granting the permit.  No party appealed the Commission's decision.

[¶5.]        Four years later, TransCanada still lacked a presidential permit, and construction of the South Dakota portion of the project had yet to begin.  Meanwhile, TransCanada continued to build other portions of the Keystone Pipeline system outside South Dakota.  Desiring to move forward with the Keystone XL Pipeline, on September 15, 2014, TransCanada filed a certification with the Commission as required by SDCL 49-41B-27.  This statute provides in part that "if . . . construction . . . commences more than four years after a permit has been issued, then the utility must certify to the Public Utilities Commission that such facility continues to meet the conditions upon which the permit was issued."

[¶6.]        In its "Petition for Order Accepting Certification," TransCanada attested that "the conditions upon which the Commission granted the facility permit . . . continue to be satisfied."  TransCanada stated that it remained "in compliance with the conditions . . . to the extent that those conditions have applicability in the current pre-construction phase of the Project" and that "[TransCanada] will meet and comply with all the applicable permit conditions during construction, operation, and maintenance of the Project."  TransCanada also

attached to its certification a quarterly report and a tracking table of changes. The tracking table identified changes in circumstances to those detailed in the findings made in the Commission's 2010 final decision and order. For example, TransCanada indicated that the total length of the South Dakota portion of the pipeline had increased by approximately one mile. TransCanada claimed that any such changes were "either neutral or positive to the Commission's concerns" and that "the need, impacts, efficacy, and safety" of the project had not changed in the intervening years.

[¶7.] The Commission opened docket HP14-001 for consideration of the petition for certification. According to the Commission, certification by a utility rarely attracts much interest. However, given the controversy surrounding the Keystone XL Pipeline and the magnitude of the project, the Commission decided to take extraordinary steps to involve the public. Forty-three individuals and entities applied for intervention, of which 42 received party status. These included the Cheyenne River Sioux Tribe, the Yankton Sioux Tribe, and Dakota Rural Action.

[¶8.] Beginning July 27, 2015, the Commission held a nine-day hearing. Commission Chairman Chris Nelson emphasized at the beginning of the hearing that "this case is about whether the project continues to meet those 50 Conditions. It is not a retrial of the original Permit proceeding." In addition to TransCanada and the intervenors, Commission staff also appeared as a party. The parties submitted pre-filed testimony, called witnesses, and conducted extensive cross-examination.

[¶9.] In September and October 2015, the parties submitted post-hearing briefs. On November 6, 2015, President Obama issued Executive Order 13337, directing the Secretary of State to reject TransCanada's application for a presidential permit. In a written statement, President Obama cited the project's lack of a meaningful long-term contribution to the economy, its inability to lower gas prices for American consumers, and energy security and climate change concerns as reasons for denying the permit. Subsequently, on November 9, 2015, Appellants filed a joint motion to dismiss the petition for certification and to revoke the 2010 permit. Appellants argued that TransCanada could no longer comply with condition 2 of the permit, which required that TransCanada obtain a Presidential Permit. However, at a meeting held on December 22, 2015, the Commission dismissed Appellants' joint motion, reasoning that TransCanada could theoretically comply with the condition in the future.

[¶10.] On January 6, 2016, the Commission approved TransCanada's petition for certification, and on January 21, the Commission issued its final decision and order accepting certification. Appellants and other intervenors appealed the Commission's decision to the circuit court. On January 24, 2017, President Trump issued a presidential memorandum inviting TransCanada to reapply for a presidential permit. The memorandum directed the Secretary of State to "take all actions necessary and appropriate to facilitate its expeditious review." TransCanada submitted a new application and on March 23 obtained a presidential permit, which the circuit court took judicial notice of.

[¶11.] On March 8, 2017, the circuit court held oral argument at a consolidated hearing. On June 19, 2017, the court issued a memorandum decision and an order affirming the decision of the Commission. Appellants each filed an appeal with this Court, raising numerous issues pertaining to the merits of the Commission's decision and the circuit court's affirmance. After review of the parties' submissions, this Court consolidated all three appeals and requested supplemental briefing on the issue of jurisdiction. Because we conclude that the circuit court lacked jurisdiction to hear the appeal, we do not reach the merits of the case.

## Analysis and Decision

[¶12.] As a threshold matter, we must first determine whether a right to appeal exists. *See State v. Schwaller*, 2006 S.D. 30, ¶ 5, 712 N.W.2d 869, 871. The issue whether an appeal can lie presents a jurisdictional question, *Unzelman v. City of Sioux Falls*, 65 S.D. 266, 272 N.W. 825, 826 (1937), which we review de novo, *Grajczyk v. Tasca*, 2006 S.D. 55, ¶ 8, 717 N.W.2d 624, 627. "The test for determining jurisdiction is ordinarily the nature of the case, as made by the complaint, and the relief sought." *See Lippold v. Meade Cty. Bd. of Comm'rs*, 2018 S.D. 7, ¶ 17, 906 N.W.2d 917, 922. "No right to appeal *an administrative decision to circuit court* exists unless the South Dakota Legislature enacts a statute creating that right." *Daily v. City of Sioux Falls*, 2011 S.D. 48, ¶ 24, 802 N.W.2d 905, 915 (emphasis added); *accord Unzelman*, 272 N.W. at 826. "[W]hen the [L]egislature provides for appeal to circuit court from an administrative agency, the circuit court's appellate jurisdiction depends on compliance with conditions

precedent set by the [L]egislature." *Schreifels v. Kottke Trucking*, 2001 S.D. 90, ¶ 9, 631 N.W.2d 186, 188. Noncompliance deprives the court of subject-matter jurisdiction. *Id.* If the circuit court acted without jurisdiction, then "any judgment it entered in the matter is void," and we do "not acquire jurisdiction over that subject matter by the filing of appeal from a final order or judgment." *Cable v. Union Cty. Bd. of Cty. Comm'rs*, 2009 S.D. 59, ¶ 52, 769 N.W.2d 817, 833. Thus, "[a]n attempted appeal from which no appeal lies is a nullity," and the circuit court's decision on the merits must be vacated. *See Elliott v. Bd. of Cty. Comm'rs of Lake Cty.*, 2005 S.D. 92, ¶ 15, 703 N.W.2d 361, 368.

[¶13.] We first observe that SDCL 49-41B-30, SDCL chapter 49-41B's authorization for an appeal, does not permit an appeal from certification proceedings. SDCL 49-41B-30 provides that "[a]ny party to a *permit issuance proceeding* aggrieved by the final decision of the . . . Commission *on an application for a permit*, may obtain judicial review of that decision[.]" (Emphasis added.) Appellants are not parties to a "permit issuance proceeding." SDCL 49-41B-27 does not require any decision or action by the Commission—it requires only the utility's *certification*—meaning Appellants are not appealing from a "final decision . . . on an application for a permit[.]" *See* SDCL 49-41B-30. Thus, neither the nature of the case nor the relief sought involved a permit application. *See Lippold*, 2018 S.D. 7, ¶ 17, 906 N.W.2d at 922. Accordingly, SDCL 49-41B-30 does not authorize an appeal from a certification pursuant to SDCL 49-41B-27.[2]

---

2. The Legislature enacted SDCL 49-41B-27 in 1977. Unlike South Dakota, neighboring states have passed laws explicitly permitting parties to appeal

(continued . . .)

[¶14.]       Appellants instead contend that the South Dakota Administrative Procedures Act, SDCL chapter 1-26, contains a broad right of review of administrative decisions.  Under SDCL 1-26-30, "[a] person who has exhausted all administrative remedies available within any agency or a party who is aggrieved by a final decision in a contested case is entitled to judicial review[.]"  Further, SDCL 1-26-30.2 provides that "[a]n appeal shall be allowed in the circuit court to any party in a contested case from a final decision, ruling, or action of an agency."  According to Appellants, the proceedings below constituted a contested case from which they appeal as aggrieved parties.

[¶15.]       However, even assuming SDCL chapter 1-26 generally authorizes appeals from some SDCL chapter 49-41B proceedings, this appeal was not from a contested case within the meaning of SDCL chapter 1-26.  A contested case is "a proceeding . . . in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing[.]"  SDCL 1-26-1(2).  The parties dispute whether the Commission's hearing was "required by law."  We have said that a hearing is "required by law" when required by a statute, an agency rule, or a due-process constitutional requirement.  *Carlson*

_____

(. . . continued)
from a utility's certification of continuing suitability.  *See, e.g.*, Minn. Stat. Ann. § 216E.15 (West 2018) ("Any applicant, party, or person aggrieved by the issuance of a site or route permit. . . or a certification of continuing suitability filed by a utility with the commission . . . may appeal to the Court of Appeals . . . ."); N.D. Cent. Code Ann. § 49-22.1-18 (West 2017).  Some of these laws precede SDCL 49-41B-27's enactment: Minnesota, for example, enacted its statute in 1973.  We presume the Legislature purposefully chose its words, and had it intended to include language permitting a party to appeal from a utility's certification, it would have included language prescribing this right as our neighboring states have done.

*v. Hudson*, 277 N.W.2d 715, 717-18 (S.D. 1979); *see also Valley State Bank of Canton v. Farmers State Bank of Canton*, 87 S.D. 614, 621, 213 N.W.2d 459, 463 (1973). Nothing in SDCL 49-41B-27 requires that the Commission conduct a hearing or make any determination concerning certification, and the parties cite no administrative rule authorizing or requiring such. And, as we shall explain, *infra* ¶ 22, it cannot be said that the proceedings affected the due-process rights of Appellants. Accordingly, the administrative proceeding below was not an appealable contested case within the meaning of SDCL chapter 1-26.

[¶16.] Even if certification involved a contested-case proceeding, settled rules of statutory construction dictate that SDCL chapter 1-26 does not provide appellate jurisdiction. First, we note that SDCL 49-41B-30 and SDCL chapter 1-26 must be read *in pari materia*, the object of which "is to ascertain and carry into effect the intention of the [L]egislature. [This canon of construction] proceeds upon the supposition that the several statutes are governed by one spirit and policy, and are intended to be consistent and harmonious in their several parts and provisions." *Lewis & Clark Rural Water Sys., Inc. v. Seeba*, 2006 S.D. 7, ¶ 15, 709 N.W.2d 824, 831. "Statutes must be construed *in pari materia* when 'they relate to the same person or thing, to the same class of person or things, or have the same purpose or object.'" *Id.* (quoting *Goetz v. State*, 2001 S.D. 138, ¶ 26, 636 N.W.2d 675, 683). The relevant statutes in SDCL chapter 1-26 and SDCL 49-41B-30 deal with appellate jurisdiction over agency decisions. As such, we must attempt to harmonize the two, not read them in isolation.

[¶17.] Second, in this endeavor, "[w]e assume that the Legislature intended no part of its statutory scheme be rendered mere surplusage." *Pitt-Hart v. Sanford USD Med. Ctr.*, 2016 S.D. 33, ¶ 13, 878 N.W.2d 406, 411. Appellants' interpretation of SDCL chapter 1-26 would have that chapter's appellate provisions apply to all Commission proceedings under SDCL chapter 49-41B despite SDCL 49-41B-30. However, this view of SDCL chapter 1-26 renders SDCL 49-41B-30 unnecessary because the right to appeal would have already been authorized under SDCL chapter 1-26. Appellants' reading of SDCL chapter 1-26 makes SDCL 49-41B-30 superfluous, a result we must avoid if possible.

[¶18.] Third, we note that the "terms of a statute relating to a particular subject will prevail over the general terms of another statute." *In re Wintersteen Revocable Trust Agreement*, 2018 S.D. 12, ¶ 12, 907 N.W.2d 785, 789. SDCL 49-41B-30 specifically addresses appeals from final decisions rendered by the Commission in pipeline cases under SDCL chapter 49-41B, while SDCL chapter 1-26 generally governs administrative appeals from decisions made by all agencies. As such, SDCL 49-41B-30 is the more specific of the statutes in question and prevails over the provisions of SDCL chapter 1-26.

[¶19.] Fourth, we have said that the more recent statute supersedes an older statute. *Peterson, ex rel. Peterson v. Burns*, 2001 S.D. 126, ¶ 29, 635 N.W.2d 556, 567. The Legislature enacted SDCL 1-26-30 in 1966 and SDCL 1-26-30.2 in 1975. We must presume the 1977 Legislature knew that SDCL chapter 1-26 broadly authorized appeals from agency decisions when it specifically limited that right of appeal to permit-issuance proceedings in SDCL 49-41B-30. For the latter to have

meaning, SDCL 49-41B-30 must be read as a limitation on the general rights accorded in SDCL chapter 1-26.

[¶20.]    Appellants advance several other arguments in support of their claim that they possess a right to appeal from a utility's certification. Appellants observe that the Commission admitted that the Administrative Procedure Act applied,[3] a determination that Appellants assert warrants deference as the "'law' of the agency." However, even if the Commission believed (as stated in its notice of hearing and certification decision) that an appeal was authorized under the Administrative Procedures Act, its statements cannot confer jurisdiction—only the Legislature can do so. *Daily*, 2011 S.D. 48, ¶ 24, 802 N.W.2d at 915. Appellants also observe that this case presents novel concerns about the certification process and related statutes. We agree. But the need for guidance from this Court and the importance of the issues involved do not create jurisdiction, and Appellants cite no authority contrary to the well-settled rule that this "Court has only such appellate jurisdiction as may be provided by the [L]egislature" and Article V of the South

---

3.    Appellants note that the Commission's notice of the July 27, 2015 evidentiary hearing stated that its final decision "may be appealed by the parties to the Circuit Court and the Supreme Court as provided by law." However, even assuming that the phrase "provided by law" does not indicate that an appeal must be authorized by the Legislature, an agency's "practice of informing individuals of a right to judicial review when no such remedy is available" does not itself confer jurisdiction. *See Daily*, 2011 S.D. 48, ¶ 24 n.11, 802 N.W.2d at 915 n.11. Indeed, "subject matter jurisdiction can[not] be conferred on a court . . . by the acts of the parties or the procedures they employ," *Lippold*, 2018 S.D. 7, ¶ 17, 906 N.W.2d at 922, or by "agreement, consent, or waiver," *O'Neill v. O'Neill*, 2016 S.D. 15, ¶ 31, 876 N.W.2d 486, 498.

Dakota Constitution. *Double Diamond Constr. v. Farmers Coop. Elevator Ass'n of Beresford*, 2003 S.D. 9, ¶ 7, 656 N.W.2d 744, 746.

[¶21.]     Despite this, Appellants argue that circuit courts are "courts of general jurisdiction" that can "hear all civil actions." *March v. Thursby*, 2011 S.D. 73, ¶ 16, 806 N.W.2d 239, 243; *see also* S.D. Const. art. V, § 1.  Therefore, Appellants contend that absent a legislative decree *denying* a circuit court jurisdiction, an appeal can lie in circuit court.  However, Appellants conflate a circuit court's original jurisdiction with its appellate jurisdiction, which, as stated, requires express authorization. S.D. Const. art. V, § 5; *Daily*, 2011 S.D. 48, ¶ 24, 802 N.W.2d at 915.  Appellants did not bring an original action in circuit court; rather, they appealed from the Commission's order accepting a utility's certification.  As such, principles regarding general jurisdiction do not apply.

[¶22.]     Finally, Appellants contend that they are entitled to judicial review of the Commission's decision as a matter of due process.[4]  They argue that the Commission's handling of the proceedings below violated their procedural

---

4.    Appellants also suggest that the public-trust doctrine provides an additional basis for jurisdiction.  The public-trust doctrine imposes a fiduciary duty on governmental bodies to safeguard certain natural resources for the public. *See generally Parks v. Cooper*, 2004 S.D. 27, 676 N.W.2d 823.  In its brief on the merits, Dakota Rural Action urges this Court to extend the doctrine to the State's water resources as well as its land, including soil, native grasses, and crops.  Dakota Rural Action argues "that the Commission should have set a higher bar for companies such as TransCanada, whose activities risk damaging the State's land and resources."

However, "the burden of . . . asserting the public trust lies with the party asserting it." *Id.* ¶ 20, 676 N.W.2d at 829.  Dakota Rural Action does not elaborate further as to why the public-trust doctrine applies.  Moreover, Appellants do not explain how the public-trust doctrine can serve as a basis for jurisdiction.

due-process rights, affecting numerous property and liberty interests. These arguments presume that the governmental activity involved (the Commission's acceptance of a utility's certification of compliance) was a contested case—an adjudication of rights or privileges—which must adhere to procedures "consonant with due process." *See In re Application of Union Carbide Corp.*, 308 N.W.2d 753, 758 (S.D. 1981). But the activity required by SDCL 49-41B-27 involves a *utility's filing* of a certification rather than the Commission's adjudication of a party's "legal rights" or "privileges" after opportunity for hearing. *See* SDCL 1-26-1(2) (defining contested-case proceeding). Although the Commission issued an order accepting TransCanada's certification, nothing in the statute required that it issue such an order. Rather, the Commission's acceptance of TransCanada's certification was an administrative act that was part of the Commission's supervisory responsibilities to regulate already permitted activities. It was no different than the administrative activities of countless other regulatory agencies that must monitor compliance with filing requirements imposed on those who are engaged in previously authorized construction projects. Thus, the Commission's statutory duty here is administrative: it does not involve the quasi-judicial adjudication of Appellants' liberty and property interests.[5] That type of administrative action is not generally

---

5. Appellants cite *Daily*, 2011 S.D. 48, ¶ 18, 802 N.W.2d at 912, in analyzing "what process is due in a particular case[.]" In *Daily*, we examined whether the administrative-appeals process employed by the City of Sioux Falls deprived Daily, who received several zoning and municipal citations and fines, of a protected property interest. Daily challenged the burden of proof imposed at a hearing conducted by the City and the limitations placed on his ability to "subpoena witnesses or documents or to otherwise investigate the basis of the citations before the hearing." *Id.* ¶ 19. However, Daily did not

(continued . . .)

reviewable by appeal to the courts. *See State, Dep't of Game, Fish & Parks v. Troy Township*, 2017 S.D. 50, ¶ 14, 900 N.W.2d 840, 846 (recognizing that "executive or administrative duties of a nonjudicial nature may not be imposed on judges, either directly or by appeal" (citations omitted)).

[¶23.]    We acknowledge that in some cases the Commission may question the sufficiency of a utility's certification, but SDCL 49-41B-27 does not provide the remedy. Instead, SDCL chapter 49-41B contemplates that if the utility can no longer meet the permit conditions, the Commission may exercise its revocation or suspension authority under SDCL 49-41B-33.[6] Thus, because Commission

---

(. . . continued)

appeal from the hearing. Rather, he initiated and won a declaratory-judgment action against the City. *Id.* ¶ 10, 802 N.W.2d at 910.

Because "the South Dakota Constitution requires meaningful judicial review" of a city's decision to assess a civil fine, which deprives an individual of a protected-property interest, we reviewed whether the hearing examiner held the City to its burden and determined that Daily "was not afforded the right to meaningful judicial review of the factual basis of the citations that the South Dakota Constitution requires." *Id.* ¶ 24, 802 N.W.2d at 915. However, in so saying, we reiterated the well-established proposition that "[n]o right to appeal an administrative decision to circuit court exists unless the South Dakota Legislature enacts a statute creating that right." *Id.* We noted that local units of government are excluded from the definition of an "agency" under SDCL chapter 1-26; thus, it was critical that Daily be afforded "an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* ¶¶ 24-25 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed. 2d 62 (1965)).

This case differs from *Daily* in that Daily was challenging procedures used to enforce zoning regulations, i.e., using citations and fines. That is far different from a situation in which an individual claims due-process rights to challenge a government's regulation of others' activities.

6.    The parties debate what purpose SDCL 49-41B-27 serves if certification does not require proof that the utility continues to comply with the conditions imposed. Such a communication is simply an administrative act, but one

(continued . . .)

proceedings under SDCL 49-41B-27 are not contested-case proceedings, the Appellants here were not entitled to procedural due process in the Commission's acceptance of the certification.

[¶24.] That is not to say the Commission erred by holding an evidentiary hearing, particularly given the importance of and the controversy surrounding the Keystone XL Pipeline. As stated in SDCL 49-41B-1, "energy development in South Dakota . . . significantly affects the welfare of the population, the environmental quality, the location and growth of industry, and the use of natural resources of the state." The Commission, pursuant to its charge to "ensure that the location, construction, and operation of facilities will produce minimal adverse effects on the environment and upon the citizens of this state," SDCL 49-41B-1, conducted a hearing to thoroughly consider all available information and evidence. As stated, SDCL 49-41B-33 empowers the Commission to revoke or suspend a permit if it finds that the utility cannot comply with the conditions imposed. Additionally, SDCL 49-41B-34 authorizes civil and criminal penalties for noncompliance.[7]

---

(. . . continued)

> which serves an important function: to put the Commission and the State on notice that a utility intends to continue working on a project, sometimes many years after the grant of a permit. The Commission may then inquire into whether the utility actually remains in compliance. As noted above, while SDCL 49-41B-27 does not in and of itself obligate or permit the Commission to act, SDCL 49-41B-33 enables the Commission to suspend or revoke a permit. As such, nothing in today's opinion should be construed to limit the Commission's authorization to, for example, conduct hearings or solicit public feedback.

7.      SDCL 49-41B-34 provides:

> Any person required by this chapter to have a permit who begins construction of a facility without previously securing a permit as

(continued . . .)

Nevertheless, SDCL 49-41B-27 by its terms does not direct the Commission to act either by holding a hearing or by accepting or rejecting certification.

[¶25.]     Even though the Keystone XL Pipeline may pose significant risks, we must in every case first conclude that subject-matter jurisdiction exists. Irrespective of the importance or costs of a legal challenge—even one spanning years, with a record totaling tens of thousands of pages—without having answered that threshold question in the affirmative, the law constrains us to act no further. We must therefore vacate the decision of the circuit court and dismiss the appeal.

[¶26.]     GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, and GIENAPP, Retired Circuit Court Judge, participating.

[¶27.]     GIENAPP, Retired Circuit Court Judge, sitting for JENSEN, Justice, disqualified.

---

(. . . continued)

> prescribed by this chapter, or who constructs, operates, or maintains a facility other than in compliance with the permit and any terms, conditions, and modifications contained therein is guilty of a Class 1 misdemeanor and is subject to a civil penalty of not more than ten thousand dollars. Each day of violation shall constitute a separate offense. The civil penalty provided for in this section shall be recoverable by suit filed by the Public Utilities Commission and shall be deposited into the permanent school fund.