#25698, #25715-a-GAS

**2011 S.D. 48**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DANIEL DAILY,                                        Plaintiff and Appellee,

  v.

CITY OF SIOUX FALLS,                         Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE KATHLEEN K. CALDWELL
Judge

\* \* \* \*

RONALD A. PARSONS, Jr. of
Johnson, Heidepriem & Abdallah, LLP
Sioux Falls, South Dakota
 and
CHARLES L. DOROTHY
Sioux Falls, South Dakota                    Attorneys for plaintiff
                                                              and appellee.


MICHAEL A. HENDERSON
WILLIAM C. GARRY of
Cadwell, Sanford, Deibert
 & Garry, LLP
Sioux Falls, South Dakota                    Attorneys for defendant
                                                              and appellant.

\* \* \* \*

ARGUED APRIL 26, 2011

OPINION FILED **08/24/11**

SEVERSON, Justice

[¶1.]		Over a period of two years, the City of Sioux Falls issued Daniel Daily four citations for a concrete extension to his driveway. Daily appealed each of the citations, but a hearing was held only on the final two citations he received. The hearing examiner upheld the final two citations. Daily then initiated this declaratory judgment action against the City. After a four-day trial, the trial court concluded that the City's administrative appeals process, both as written and as applied, as well as the enforcement of its zoning ordinances, violated Daily's constitutional rights to procedural due process and equal protection. We affirm.

**Background**

[¶2.]		In summer of 2004, Daily hired a contractor to construct a concrete extension to the east side of his driveway. The contractor had laid concrete extensions to the driveways of various homes in Daily's neighborhood and informed Daily that a permit was not required. The completed extension spanned approximately seven feet from the edge of the existing driveway and ran the length of the driveway. The extension also ran up to a fire hydrant in the right-of-way. The extension allowed Daily, who has a serious heart condition, to use a snow-blower to clear snow away from the hydrant.

[¶3.]		In April of 2006, Brad Hartmann, a City code enforcement officer, came to Daily's home. Hartmann asked Daily what he planned to do about the notice-of-ordinance violation he received regarding the concrete extension to his driveway. When Daily stated that he did not receive the notice, Hartmann maintained that he posted the warning on Daily's door. He advised Daily that the

- 1 -

concrete extension violated the City's zoning ordinances that prohibit concrete from being poured in the front setback and right-of-way. When Daily explained that many of his neighbors had constructed concrete extensions to their driveways, Hartmann advised Daily to seek a variance from the City.

[¶4.]     In May of 2006, Daily applied for a variance for the concrete extension to his driveway. After a hearing in June of 2006, the City Board of Adjustment denied Daily's application. The Board acknowledged that many of Daily's neighbors had constructed concrete extensions to their driveways, but it expressed concern about Daily's concrete extension because it was constructed within feet of a fire hydrant. The Board noted that a vehicle parked on Daily's concrete extension could easily back into the hydrant. Daily appealed the Board's decision, alleging selective enforcement of the City's zoning ordinances. After a hearing on his appeal in July of 2006, the hearing examiner upheld the Board's decision. Daily did not appeal the hearing examiner's decision.

[¶5.]     On September 7, 2006, Daily received citation 1313, the first citation for the concrete extension to his driveway.[1] The citation assessed Daily a fine of $100. In the section entitled "Violation Details," it stated, "Concrete poured in the required front setback and right-of-way." After "Code Sections," it stated,

---

1.     Citation 1313 was not personally delivered to Daily. Rather, Hartmann hung the citation on Daily's front door. He wrote the word "posted" on the signature line in the citizen-acknowledgement section of the citation. Hartmann did not prepare or sign an affidavit of posting.

"15.49.060, 15.55.010, and 15.55.040."[2] Daily appealed the citation, alleging selective enforcement of the City's zoning ordinances. On September 26, 2006, Daily appeared for a hearing on the citation. The hearing did not take place because the hearing examiner was unable to attend. Instead, Daily met with Hartmann and Shawn Tornow, an assistant city attorney, regarding the citation. Tornow advised Daily that the hearing would be rescheduled.

[¶6.] On September 27, 2006, the day after the cancelled hearing on citation 1313, Hartmann issued citation 1379.[3] This second citation also assessed Daily a $100 fine. In the section entitled "Violation Details," it stated, "Right-of-way construction without a permit from City Engineering." It cited Municipal Code

---

2. Zoning Ordinance 15.49.060 provides in part:

> At least 90 percent of the required front yard setback in any zoning district shall be landscaped and maintained with living ground cover. The required setback may include necessary hard surfacing of driveways to reach allowable parking, loading, or stacking areas. Poured or laid asphalt, concrete, or similar hard surfacing shall not be used as allowable landscape material. . . . A setback area of at least five feet shall be provided between the parking surface and property line where a parking lot abuts neighboring residentially used property.

Further, Zoning Ordinance 15.55.010(a)(5) provides in part: "Parking spaces shall be located according to the following standards: Parking in the required front or side yard. No parking spaces permitted in the required front or side yard in any district except as otherwise provided in this title." Finally, Zoning Ordinance 15.55.040(3) provides in part: "Parking is prohibited in the required front yard setback, except as otherwise provided in this title."

3. Citation 1379 was not personally delivered to Daily. Rather, Hartmann mailed the citation to Daily. He wrote the word "mailed" on the signature line in the citizen-acknowledgement section of the citation. Hartmann did not prepare or sign an affidavit of mailing.

section 35½-4.[4]  Daily appealed this second citation, alleging selective enforcement of the City's municipal code.  Because the hearing on citation 1313 had not yet been rescheduled, Daily also requested a hearing on that citation.  Daily received a notice scheduling a hearing on both citations for October 23, 2006.

[¶7.]          The parties dispute whether the October hearing on citations 1313 and 1379 took place.  At the court trial in the declaratory judgment action, Daily offered his personal calendar and detailed testimony about the hearing.  He testified that after Daily questioned Hartmann regarding the citations, Tornow stopped the hearing and asked him to step out of the room.  When Daily entered the room several minutes later, Tornow told him that he would receive additional citations if he did not remove the concrete extension to his driveway.  Daily did not receive a decision regarding his appeals of the citations.  In contrast, the City, through the testimony of Hartmann, a paralegal for the city attorney's office, and a City director

---

4.     Sioux Falls Municipal Code § 35½-4(a) provides:

> Except as otherwise provided in this Code, no person may construct in any right-of-way without first having obtained a permit. . . . A construction permit allows the holder to construct in that part of the right-of-way described in the permit and to hinder free and open passage in the specified portion of the right-of-way by placing facilities as described therein, to the extent and for the duration specified therein.

Sioux Falls Municipal Code § 35½-2 defines "facilities" as follows:

> [A]ny tangible thing located in any right-of-way; but shall not include sidewalks and private driveway approaches regulated under chapter 38 of this Code, water sprinkler systems, invisible dog fences, mailboxes, boulevard plantings or gardens in the right-of-way.

who served on the decision panel, contended that Daily did not appear for the hearing. The City ordinarily records its administrative hearings, but no audio recording for this hearing has been found. The outside cover of the City's official file for the citations states, "No Show, No Tape," but it is not clear whether this note refers to the October hearing or the September hearing for which the hearing examiner was not available.

[¶8.] The City did not contact Daily again regarding the concrete extension to his driveway until April of 2008, when he received citations 2545 and 2546 in the mail. Citation 2545 cites the same zoning ordinances as citation 1313, and citation 2546 cites the same municipal code section as citation 1379. Daily appealed citations 2545 and 2546, alleging selective enforcement and double jeopardy. After receiving a notice scheduling a hearing on both citations, Daily retained an attorney.

[¶9.] A hearing on citations 2545 and 2546 took place on April 29, 2008. The City Attorney's office hired James Robbennolt, a Sioux Falls attorney, to serve as the hearing examiner.[5] Before the hearing, Robbennolt informed Daily that he bore

---

5.  Daily has not argued that his procedural due process right to an impartial tribunal was violated. Sioux Falls Municipal Code section 2-60 provides that the mayor may hire an independent hearing examiner or assign three City directors to sit as a hearing panel. The task of hiring independent hearing examiners has been delegated to the City Attorney's office, which also prosecutes code violations. When the mayor has assigned City directors to a hearing panel, the City directors have relied on the City attorney for legal advice during the administrative hearing. We recognize that "a party's due process rights to a fair and impartial tribunal," which includes the right to an "independent and unbiased adjudicator," is critical. Judith K. Meierhenry, *The Due Process Right to an Unbiased Adjudicator in Administrative Proceedings*, 36 S.D. L. Rev. 551, 554 (1991). *See also Withrow v. Larkin*, 421

(continued . . .)

the burden of proving that the City incorrectly issued the citations. Tornow informed Daily's attorney that the City's administrative appeals ordinance provides that the technical rules of evidence do not apply but that irrelevant or immaterial evidence may be excluded. During the hearing, Tornow repeatedly objected to the introduction of evidence on grounds other than relevance, and Robbennolt sustained several of his objections. The City did not hire a court reporter but recorded the hearing instead. On May 2, 2008, Robbennolt issued findings of fact and conclusions of law upholding citations 2545 and 2546.

[¶10.] In May of 2008, Daily initiated this declaratory judgment action against the City. A four-day trial was held over a period of several months. After the trial, the parties submitted proposed findings of fact and conclusions of law. The trial court ultimately concluded that the City's administrative appeals process, both as written and as applied, as well as the enforcement of its zoning ordinances violated Daily's constitutional rights to procedural due process and equal protection. The City appeals.[6]

_____

(. . . continued)
U.S. 35, 47, 95 S. Ct. 1456, 1464, 43 L. Ed. 2d 712 (1975) ("Not only is a biased decisionmaker constitutionally unacceptable, but 'our system of law has always endeavored to prevent even the probability of unfairness.'") (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 625, 99 L. Ed. 942 (1955)) (additional citation omitted)*; City of Pierre v. Blackwell*, 2001 S.D. 127, ¶ 14, 635 N.W.2d 581, 585 (noting the requirement of a proper adjudication by a "disinterested judicial officer") (citing *Hollander v. Douglas Co.*, 2000 S.D. 159, ¶ 17, 620 N.W.2d 181, 186).

6.   The docketing statement accompanying the City's notice of appeal listed three issues for this Court's consideration: (1) whether the trial court erred by denying the City's motion to dismiss; (2) whether the City's enforcement of its zoning ordinances violated Daily's constitutional rights to procedural due

(continued . . .)

## Standard of Review

[¶11.]      Whether the City's administrative appeals process violated Daily's procedural due process rights is a constitutional question that this Court reviews de novo. *State v. Holway*, 2002 S.D. 50, ¶ 9, 644 N.W.2d 624, 627 (citing *Blackwell*, 2001 S.D. 127, ¶ 7, 635 N.W.2d at 584). "Under the de novo standard of review, we give no deference to the [trial] court's conclusions of law." *In re Guardianship of S.M.N., T.D.N. & T.L.N.*, 2010 S.D. 31, ¶ 10, 781 N.W.2d 213, 218 (citing *Sherburn v. Patterson Farms, Inc.*, 1999 S.D. 47, ¶ 4, 593 N.W.2d 414, 416). But legislative enactments, including municipal ordinances, are "presumed reasonable, valid, and constitutional." *Blackwell*, 2001 S.D. 127, ¶ 9, 635 N.W.2d at 584 (quoting *Fortier v. City of Spearfish*, 433 N.W.2d 228, 230-31 (S.D. 1988)).

## Analysis and Decision

[¶12.]      The City operates under a home rule charter. The South Dakota Constitution describes "home rule" municipalities:

> A chartered governmental unit may exercise any legislative power or perform any function not denied by its charter, the Constitution, or the general laws of the state. The charter may provide for any form of executive, legislative and administrative structure which shall be of superior authority to statute,

--------

(. . . continued)

process and equal protection; and (3) whether the City's administrative appeals ordinances violated Daily's procedural due process rights. But on appeal, the City only briefed two issues: (1) whether the City's administrative appeals process violated Daily's procedural due process rights; and (2) whether the trial court improperly adopted findings of fact and conclusions of law based in substantial part on Daily's submissions. We will consider only those issues that the parties actually briefed. *See Rehm v. Lenz*, 1996 S.D. 51, ¶ 14, 547 N.W.2d 560, 565 (citing *Centrol, Inc. v. Morrow*, 489 N.W.2d 890, 893-94 (S.D. 1992)). Accordingly, the City has waived the other issues it listed in its docketing statement.

> provided that the legislative body so established be chosen by popular election and *that the administrative proceedings be subject to judicial review.*

S.D. Const. art. IX, § 2 (emphasis added). Because the City operates under a home rule charter, it is required to craft an administrative appeals process that provides individuals the right to meaningful judicial review of the facts and law supporting its administrative decisions.

[¶13.] **Whether the City's administrative appeals process violated Daily's procedural due process rights.**

[¶14.] Daily challenged the City's administrative appeals process under the Fourteenth Amendment to the United States Constitution and article VI, section 2 of the South Dakota Constitution. Both provide that no person shall be deprived of "life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1; S.D. Const. art. VI, § 2. The requirements of due process apply to adversarial administrative proceedings of local units of government. *Hanig v. City of Winner*, 2005 S.D. 10, ¶ 10, 692 N.W.2d 202, 205-06 (quoting *Strain v. Rapid City Sch. Bd.*, 447 N.W.2d 332, 336 (S.D. 1989)). "'To establish a procedural due process violation, [an individual] must demonstrate that he has a protected property or liberty interest at stake and that he was deprived of that interest without due process of law.'" *Osloond v. Farrier*, 2003 S.D. 28, ¶ 16, 659 N.W.2d 20, 24 (quoting *Hopkins v. Saunders*, 199 F.3d 968, 975 (8th Cir. 1999)).

*Is a Protected Property Interest at Stake?*

[¶15.] We first consider whether the citations Daily received deprived him of a protected property interest. "Property interests are not created by the Constitution[.]" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S. Ct.

1487, 1491, 84 L. Ed. 2d 494 (1985) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972)) (additional citation omitted). Rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* But "federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9, 98 S. Ct. 1554, 1560, 56 L. Ed. 2d 30 (1978) (quoting *Perry v. Sindermann*, 408 U.S. 593, 602, 92 S. Ct. 2694, 2700, 33 L. Ed. 2d 570 (1972)) (additional citation omitted). A government actor may not deprive an individual of a protected property interest "'without appropriate procedural safeguards.'" *Loudermill*, 470 U.S. at 541, 105 S. Ct. at 1493 (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167, 94 S. Ct. 1633, 1650, 40 L. Ed. 2d 15 (1974) (Powell, J., concurring in part and concurring in result in part)).

[¶16.]     The City issued Daily four citations for the concrete extension to his driveway. Each of the citations assessed Daily a civil fine. Numerous courts have recognized that the assessment of a civil fine deprives an individual of a protected property interest.[7] *See, e.g., Cook v. City of Buena Park*, 23 Cal. Rptr. 3d 700, 704 (Cal. Ct. App. 2005) (recognizing that a landlord has an interest in avoiding fines

---

7.     Daily argues that the citations he received deprived him of a protected property interest by placing an encumbrance on his home and property. *See, e.g., Connecticut v. Doehr*, 501 U.S. 1, 12, 111 S. Ct. 2105, 2113, 115 L. Ed. 2d 1 (1991) ("[E]ven the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection."). Because we conclude that the citations deprive Daily of a protected property interest by assessing a civil fine, we need not address this argument.

imposed by a city ordinance); *Bartlow v. Shannon*, 927 N.E.2d 88, 98 (Ill. App. Ct. 2010) ("The fines at issue, obviously, involve a protectable interest in property."). We thus conclude that the citations Daily received deprived him of a protected property interest.

*What Process Was Due?*

[¶17.]    The heart of the matter is whether the City's administrative appeals process deprived Daily of a protected property interest without due process of law. The trial court concluded that the City's administrative appeals process violated Daily's procedural due process rights for five reasons: (1) Daily bore the burden of proving that the City incorrectly issued the citations; (2) Daily was not afforded an opportunity to subpoena witnesses or documents or to otherwise investigate the basis of the citations; (3) the City issued Daily multiple citations for a single violation of its zoning ordinances and municipal code; (4) the hearing examiner did not apply the applicable rules of evidence in a fair and even-handed manner; and (5) the failure to keep a complete and accurate record of Daily's administrative appeal hampered the trial court's ability to conduct meaningful review of the proceedings. The City challenges the trial court's conclusions.

[¶18.]    Because "[d]ue process centrally concerns the fundamental fairness of governmental activity," it is not easily defined. *Quill Corp. v. North Dakota*, 504 U.S. 298, 312, 112 S. Ct. 1904, 1913, 119 L. Ed. 2d 91 (1992). *See Carey v. Piphus*, 435 U.S. 247, 262, 98 S. Ct. 1042, 1051, 55 L. Ed. 2d 252 (1978) (One "purpose of procedural due process is to convey to the individual a feeling that the government

has dealt with him fairly[.]"). Determining what process is due in a particular case requires consideration of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18 (1976) (citing *Goldberg v. Kelly*, 397 U.S. 254, 263-71, 90 S. Ct. 1011, 1018-22, 25 L. Ed. 2d 287 (1970)).

*Burden of Proof and Opportunity to Investigate*

[¶19.]      The City first challenges the trial court's conclusion that its administrative appeals process violated Daily's procedural due process rights because he bore the burden of proving that the City incorrectly issued the citations and because he was not afforded an opportunity to subpoena witnesses or documents or to otherwise investigate the basis of the citations before the hearing.[8]

---

8.      City ordinance describes an individual's rights in an administrative hearing:

> The appellant, the major organization unit or agency, and any other party to an appeal shall have these rights among others:
> (1)      To call and examine witnesses on any matter relevant to the issue of the hearing;
> (2)      To introduce documentary and physical evidence;
> (3)      To cross-examine opposing witnesses on any matter relevant to the issues of the hearing; and
> (4)      To rebut evidence.

Sioux Falls Municipal Code § 2-63.

At trial, the trial court specifically questioned the hearing examiner about the burden of proof:

> Q: I just have a couple questions about the procedure here. When someone gets a citation and they ask for a hearing, that's an appeal, right?
>
> A: That's my – yes.
>
> Q: So there is no hearing to begin with for them to appeal from. They are just appealing from the citation.
>
> A: From the citation itself, yes, ma'am.
>
> Q: So could that be why there is some confusion when you have attorneys show up and they think the City is going to go forward proving there is a violation or that the citation was properly issued?
>
> A: I never thought about it that way. But that could be why.
>
> Q: There is no initial –
>
> A: Right.
>
> Q: – determination that they violated the citation.
>
> A: Yes, ma'am.
>
> Q: So they are kind of guilty until they prove themselves innocent, if the burden is on the citizen?
>
> A: If the burden is on the appellant they have – this is my interpretation – they have the burden of showing that the City improperly issued the citation to begin with.
>
> Q: Right. So there is no process where the City has to come forward and say this is what I saw, this is why I issued the citation. That never has to happen?
>
> A: It's my understanding – and I don't know – I don't want to jump off a cliff here, but it's my understanding that the citation – the actual citation itself is not issued until after letters are mailed to the person in question saying we've inspected your property and we think you're in violation

> of this section and this section and this section of the code. This is – and then – and they are given, say two weeks to comply with the ordinance. And – and once they are in compliance then they are supposed to call the City and the City will send somebody out to inspect as to whether or not they are in compliance. If they don't do that or if they don't respond within two weeks, it's only then that the citation is issued – the actual citation itself.

> Q:    Yeah. Okay. So it starts out with the letter like you're saying, then there is a citation issued and then the first hearing that a person gets is the appeal?

> A:    That's my understanding.

The City takes the position that the issuance of a citation by a City code enforcement officer establishes non-compliance and that an individual who appeals a citation bears the burden of proving that the City incorrectly issued it. This practice, though not set forth in the City's administrative appeals ordinances, was applied to Daily.[9]

[¶20.]    This Court has addressed the constitutionality of a similar practice. In *City of Pierre v. Blackwell*, an animal control officer impounded Blackwell's dog because he determined that it was dangerous. 2001 S.D. 127, 635 N.W.2d 581. When the City Attorney released the dog to him, Blackwell refused to comply with the City's requirements for keeping a dangerous animal and did not allow the City to impound the animal. The City brought criminal charges against Blackwell. At

---

9.    In *Daniels Construction, Inc. v. City of Sioux Falls*, the Second Judicial Circuit, per Judge Srstka, held that a City hearing examiner improperly pursued his authority by placing the burden of proof on the individual. Civ. No. 06-1838, *4 (Dec. 11, 2007). The City did not appeal the circuit court's decision but continued its practice of placing the burden of proof on individuals at administrative hearings.

trial, the trial court did not conduct an independent evaluation of the dog's dangerousness but "merely reviewed the animal control officer's determination for its legality." *Id.* ¶ 5. Blackwell was convicted of non-compliance with the City's ordinance for keeping a dangerous animal.

[¶21.] Blackwell challenged his conviction on the ground that his procedural due process rights had been violated. We held that Blackwell was not afforded a fair trial:

> The City must be required to prove, as an element of the crime, that the dog was dangerous beyond a reasonable doubt. . . . The City . . . chose to bring criminal charges against Blackwell and therefore must carry the appropriate burden of proof.
>
> While evidence regarding the dangerousness of the dog was presented by both sides at trial, there was no independent evaluation of this evidence by the trial court. The court stated [that] "it is not a judicial function to try de novo a declaration of dangerousness by the City." . . . Here, there was no independent determination of dangerousness by a neutral judicial officer as part of the criminal proceeding.
>
> In refusing to evaluate the evidence and make a finding of fact on the issue of the dog's dangerousness, the trial court did not hold the City to its burden of proof. Because the trial court merely reviewed the animal control officer's decision for its legality, we find that due process was not served by the trial court in this case.

*Id.* ¶¶ 15-17. We recognized that "[e]ven in a civil context, the animal control officer's claim that he made the dangerousness determination in compliance with statutory guidelines is not sufficient[.]" *Id.* ¶ 16 n.2.

[¶22.] The hearing examiner in this case conducted an independent evaluation of the factual basis of the citations Daily received but failed to hold the City to its burden of proof. Allocation of the burden of proof is constitutionally

significant. For example, in *Armstrong v. Manzo*, a mother's husband sought to adopt her child without the biological father's consent. 380 U.S. 545, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965). The mother and her husband thus filed an affidavit alleging that the father failed to contribute to the child's support. When the father received notice of the adoption after it was finalized, he filed a motion to set the adoption aside. At the hearing on the matter, the father bore the burden of establishing that he contributed to the child's support. The United States Supreme Court found the post-adoption hearing constitutionally insufficient:

> As the record shows, there was placed upon [the father] the burden of affirmatively showing that he had contributed to the support of his [child] to the limit of his financial ability over the period involved. The burdens thus placed upon [the father] were real, not purely theoretical. For "it is plain that where the burden of proof lies may be decisive of the outcome." Yet these burdens would not have been imposed upon him had he been given timely notice in accord with the Constitution.

*Id.* at 551, 85 S. Ct. at 1191 (quoting *Speiser v. Randall*, 357 U.S. 513, 525, 78 S. Ct. 1332, 1342, 2 L. Ed. 2d 1460 (1958)). The Court thus remanded for a new hearing with the burden of proof placed on the mother and her husband to demonstrate the father's failure to support the child.

[¶23.] Weighing the three *Mathews* factors demonstrates that holding the City to its burden of proof was constitutionally required in this case. *See Mathews,* 424 U.S. at 335, 96 S. Ct. at 903. On the one hand, Daily has a significant private interest in avoiding the assessment of a civil fine. *See id.* On the other hand, the City has an interest in ensuring that its residents comply with its zoning ordinances and municipal code. *See id.* But in this case, we believe it is clear that properly allocating the burden of proof would reduce the risk of erroneously depriving

- 15 -

individuals of protected property interests without placing substantial fiscal or administrative burdens on the City. *See Armstrong*, 380 U.S. at 551, 85 S. Ct. at 1191.

[¶24.] Moreover, the South Dakota Constitution requires meaningful judicial review of the City's administrative decision regarding the citations Daily received. No right to appeal an administrative decision to circuit court exists unless the South Dakota Legislature enacts a statute creating that right. *Vitek v. Bon Homme Cnty. Bd. of Comm'rs*, 2002 S.D. 100, 650 N.W.2d 513 (allowing an appeal to circuit court from a county commission decision under SDCL 7-8-27); *Dale v. Bd. of Educ., Lemmon Indep. Sch. Dist. #52-2*, 316 N.W.2d 108 (S.D. 1982) (allowing an appeal to circuit court from a school board decision under SDCL 13-46-1). While SDCL 1-26-30.2 allows an individual to appeal "a contested case from a final decision, ruling, or action of an agency," SDCL 1-26-1(1) specifically excludes a local unit of government from the definition of an "agency."[10] Although Daily could seek judicial intervention by an extraordinary writ or a declaratory judgment action, that review is limited to

---

10. The South Dakota Administrative Procedures Act (SDAPA) guarantees individuals many of the procedural protections Daily claims he was due. *See* SDCL 1-26-18 (providing for discovery and subpoena of persons and documents in contested cases); SDCL 1-26-19 (providing that the rules of evidence shall be followed); SDCL 1-26-33 (requiring an agency to transmit the original or a certified copy of the entire record of its proceedings to circuit court when its decision is appealed). Because SDCL 1-26-1(1) excludes local units of government from the definition of "agency," the SDAPA does not apply to the City's administrative appeals process.

the question whether the hearing examiner "regularly pursued" his authority.[11]

SDCL 21-31-8. Thus, Daily was not afforded the right to meaningful judicial review

of the factual basis of the citations that the South Dakota Constitution requires.[12]

[¶25.]    We do not believe that the City's administrative appeals process

afforded Daily an opportunity to be heard "at a meaningful time and in a

meaningful manner." *See Armstrong*, 380 U.S. at 552, 85 S. Ct. at 1191. The City

issued Daily four citations for the concrete extension to his driveway and was

---

11.    The City has long engaged in a practice of informing individuals of a right to judicial review when no such remedy is available. *See, e.g., Daniels Constr., Inc. v. City of Sioux Falls*, Civ. No. 06-1838 (Aug. 24, 2006) (dismissing, on the City's motion, a petition seeking to appeal the City's administrative decision to circuit court because the City's administrative appeals ordinance established no means to do so). In this case, the notices of the scheduling hearings on the citations Daily received either read, "The Hearing Examiner's Decision may be appealed by either party to Circuit Court, as provided by law," or, "The Hearing Examiner's decision may be subject to judicial review as provided by law." Yet when Daily's attorney made an offer of proof for the purposes of appeal at the administrative hearing, Tornow objected. He argued that the offer of proof was improper because Daily could only seek judicial review of the City's administrative decision by an extraordinary writ or a declaratory judgment action. The hearing examiner sustained Tornow's objection to the offer of proof.

12.    In *Daniels Construction, Inc. v. City of Sioux Falls*, the Second Judicial Circuit subsequently considered the constitutionality of the City's administrative appeals ordinance. Civ. No. 06-1838 (Feb. 8, 2007). The circuit court held that the City's administrative appeals ordinance was unconstitutional to the extent that it articulated a right to appeal to circuit court but established no means to do so. *Id.* *5. The circuit court delayed the effective date of its decision to allow the City to seek legislation establishing a process to appeal its administrative decisions to circuit court. *Id.* *6. Rather than seeking new legislation, the City amended its administrative appeals ordinance to articulate a right to judicial review of its administrative decisions. But again, the City did not establish a process for judicial review of the facts and law supporting its administrative decisions. An extraordinary writ or a declaratory judgment action is not meaningful judicial review.

therefore required to carry the appropriate burden of proof. *See Blackwell*, 2001 S.D. 127, ¶ 15, 635 N.W.2d at 586. Yet Daily, in his first and only hearing on the factual basis of the citations, was charged with the difficult task of overcoming Hartmann's initial determination of non-compliance. This difficulty was compounded by the fact that Daily was not afforded an opportunity to subpoena witnesses or documents or to otherwise investigate the basis for the citations.[13] Because the hearing examiner in this case did not hold the City to its burden of proof, the City's administrative appeals process deprived Daily of a protected property interest without due process of law.

*Issuing Multiple Citations*

[¶26.]    The City also challenges the trial court's conclusion that it violated Daily's procedural due process rights by issuing multiple citations for a single violation of its zoning ordinances and municipal code. Sioux Falls Municipal Code section 2-114(b) specifically provides that "[a] continuing violation of this Code constitutes a separate and distinct violation each day that the violation exists." The Code further states:

> If the responsible party fails to correct the violation, subsequent administrative citations may be issued for the same violations. The amount of the civil penalty shall increase at a rate specified in ordinance.

---

13.    The City argues that it need not afford individuals an opportunity to subpoena witnesses or documents or to otherwise investigate the basis of citations because it makes City employees readily available for testimony at administrative hearings. Yet at Daily's administrative hearing, Tornow specifically instructed a City employee not to answer questions Daily's counsel posed during an offer of proof.

Sioux Falls Municipal Code § 2-117(c). And finally:

> The failure of any person to file a timely appeal or pay the civil penalties within the time specified on the citation shall constitute an irrebuttable presumption that a violation has occurred. It may result in the city attorney filing legal proceedings in magistrate or circuit court. Alternatively, the city may pursue any other legal remedy available to collect the civil penalty or correct the violation of city ordinance.

Sioux Falls Municipal Code § 2-118.

[¶27.] As a matter of policy, the City repeatedly cites individuals for violations until they finally comply with its zoning ordinances. Shawna Goldammer, the City's zoning enforcement manager, testified that the City Attorney's office made the decision long ago not to initiate legal proceedings in magistrate or circuit court to collect fines or to correct violations:

Q: So rather than utilize the circuit court system to enforce these two citations, Mr. Hartmann, your department, just issues new citations two years later for the same violations?

A: Yes. That is what happened here because the violation is still present.

Q: All right. So rather than use the court system, at least in Mr. Daily's case – to enforce the violations of the City's zoning ordinances, you just repeatedly cite citizens like Mr. Daily?

A: When the violation continues to be present, yes.

Q: And you never go into the circuit court system so the circuit court judge can look at, hear the evidence, and determine whether the decision of the City was legitimate?

A: We do not go to circuit court except in extreme circumstances.

In this case, the City did not initiate legal proceedings in magistrate or circuit court to collect Daily's fines or to correct his violations. It repeatedly cited him for the same violations instead. While this practice did not constitute a technical violation of Daily's procedural due process rights, it is a relevant consideration in evaluating the fairness of the City's administrative appeals process.

*Applicable Rules of Evidence*

[¶28.]     The City next challenges the trial court's conclusion that Daily's procedural due process rights were violated because the hearing examiner did not apply the applicable rules of evidence in a fair and even-handed manner. City ordinance governs the admissibility of evidence in administrative appeals:

> The following rules shall govern the procedures for an administrative hearing:
>
> (1) Hearings and administrative appeals need not be conducted according to the technical rules relating to evidence and witnesses.
>     . . .
> (4) Any relevant evidence shall be admitted if it is the type of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of such evidence after objection in civil actions in courts of competent jurisdiction in this state.

Sioux Falls Municipal Code § 2-62.

[¶29.]     Application of the technical rules of evidence is not constitutionally required. *United States v. Fell*, 360 F.3d 135, 144-45 (2d Cir. 2004). Numerous courts have recognized that this is especially true in administrative proceedings. *See, e.g., R&B Transp., L.L.C. v. U.S. Dep't of Labor, Admin. Review Bd.*, 618 F.3d 37, 45 (1st Cir. 2010); *Hardisty v. Astrue*, 592 F.3d 1072, 1075 (9th Cir. 2010);

*Lybesha v. Holder*, 569 F.3d 877, 882 (8th Cir. 2009) (citing *Tun v. Gonzales*, 485 F.3d 1014, 1025-26 (8th Cir. 2007)). Yet it cannot be doubted that the applicable rules of evidence must be applied in a fair and even-handed manner. *See Withrow*, 421 U.S. at 46, 95 S. Ct. at 1464 ("[A] 'fair trial in a fair tribunal is a basic requirement of due process.'" (quoting *Murchison*, 349 U.S. at 136, 75 S. Ct. at 625)).

[¶30.]    In this case, it is the application of the rules of evidence that deprived Daily of a fair hearing. Before the administrative hearing, Tornow informed Daily's attorney that the technical rules of evidence did not apply but that irrelevant or immaterial evidence may be excluded. During the hearing, Tornow repeatedly objected to the introduction of evidence on grounds other than relevance, and the hearing examiner sustained many of his objections. Yet when Daily's attorney objected to evidence on grounds other than relevance, Tornow reminded the hearing examiner that the technical rules of evidence did not apply. We believe that this application of the City's administrative appeals ordinance violated Daily's procedural due process rights.

*Recordkeeping*

[¶31.]    The City finally challenges the trial court's conclusion that the City's failure to keep a complete and accurate record of Daily's administrative appeal hampered its ability to conduct meaningful review of the proceedings. Article IX, section 2 of the South Dakota Constitution requires that administrative proceedings of local units of government operating under a home rule charter be subject to judicial review. Our review of the record in this case confirms that the audio

recording of Daily's administrative appeal is rather poor and that the City's official file for Daily's citations is disorganized and incomplete. But because the City's failure to keep an adequate record of Daily's administrative appeal was not so deficient as to hamper our review of the proceedings, we do not believe it constituted a technical violation of Daily's constitutional rights. But it too is a relevant consideration in evaluating the fairness of the City's administrative appeals process.

[¶32.]     Based on our ruling addressing procedural due process issues, we need not reach the remaining issues raised by the City.

[¶33.]     Affirmed.

[¶34.]     GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and MEIERHENRY, Retired Justice, concur.