#27524, #27538-r-LSW
**2016 S.D. 45**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

In the Matter of the MARVIN M.
SCHWAN CHARITABLE FOUNDATION,

MARK SCHWAN and PAUL SCHWAN,
as members of the Trustee Succession
Committee of the Marvin M. Schwan
Charitable Foundation,                           Petitioners and Appellants,

          v.

LAWRENCE BURGDORF, KEITH BOHEIM,
KENT RAABE, GARY STIMAC, and LYLE
FAHNING, as Trustees of the Marvin M.
Schwan Charitable Foundation,                    Respondents and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MARK SALTER
Judge

\* \* \* \*

BLAKE SHEPARD, JR.
ALLEN I. SAEKS of
Stinson Leonard Street, LLP
Minneapolis, Minnesota

          and

THOMAS J. WELK
JASON R. SUTTON of
Boyce Law Firm, LLP                              Attorneys for petitioners
                                                 and appellants.

\* \* \* \*

                                                 ARGUED ON APRIL 26, 2016
                                                 OPINION FILED **05/18/16**

REECE ALMOND
VINCE M. ROCHE of
Davenport, Evans, Hurwitz
  & Smith, LLP
Sioux Falls, South Dakota                    Attorneys for respondents
                                             and appellees.


RONALD A. PARSONS, JR.
PAMELA R. BOLLWEG of
Johnson, Janklow, Abdallah,
  Bollweg & Parsons, LLP
Sioux Falls, South Dakota                    Attorneys for beneficiaries and
                                             appellees Bethany Lutheran
                                             College, Wisconsin Lutheran
                                             College, Evangelical Lutheran
                                             Synod, and WELS Kingdom
                                             Workers.


MARTY J. JACKLEY
Attorney General

PHILIP D. CARLSON
JEFFREY P. HALLEM
Assistant Attorneys General
Pierre, South Dakota                         Attorneys for appellee Attorney
                                             General of South Dakota.


KENNITH L. GOSCH of
Bantz, Gosch & Cremer, LLC
Aberdeen, South Dakota                       Attorneys for appellee
                                             Wisconsin Evangelical
                                             Lutheran Synod.

WILBUR, Justice

[¶1.]        Two members of a seven-member trust succession committee petitioned the circuit court for court supervision of the trust under SDCL 21-22-9. The trustees, beneficiaries, and attorney general requested that the court dismiss the petition.  After a hearing, the circuit court dismissed the petition because it concluded that the two members did not meet the classifications of persons able to petition the circuit court for supervision.  Reverse and remand.

## Background

[¶2.]        Marvin M. Schwan owned and operated Schwan's Sales Enterprises (a.k.a. The Schwan Food Company) until his death in 1993.  In 1992, Marvin had created the Marvin M. Schwan Charitable Foundation.  The Foundation is a tax-exempt, charitable supporting organization under Internal Revenue Code sections 501(c)(3) and 509(a)(3).  The Foundation's governing documents (Trust Instrument) indicate that the Foundation is "organized and operated exclusively to support or benefit" the named beneficiaries.  The Trust Instrument names the following seven beneficiaries: Wisconsin Evangelical Lutheran Synod, The Lutheran Church, Missouri Synod, Wisconsin Lutheran College Conference, Inc., Evangelical Lutheran Synod, Bethany Lutheran College, Inc., International Lutheran Laymen's League, and Wisconsin Lutheran Synod Kingdom Workers, Inc. (Beneficiaries).

[¶3.]        The Trust Instrument provided for at least two trustees and not more than five trustees.  Marvin had named himself, his brother Alfred Schwan, and his friend Lawrence Burgdorf as original trustees.  Currently, the trustees include Burgdorf, Keith Boheim, Kent Raabe, Gary Stimac, and Lyle Fahning (Trustees).

The Trust Instrument grants the Trustees broad powers in their administration of the Foundation. The Trust Instrument further provides that all powers be exercised exclusively for the benefit of the Beneficiaries. In particular, the Trustees are charged with the responsibility to distribute income or principal to the Beneficiaries, to provide services or facilities for individual members of the Beneficiary organizations, and to support the activities of any religious or educational associations of the Beneficiary organizations.

[¶4.] The Trust Instrument also provided for a Trust Succession Committee (Committee) comprising at least three members and not more than seven. The original members of the Committee included Marvin, Alfred, Burgdorf, and Owen Roberts. Currently, the Committee members include Marvin's sons (Mark Schwan and Paul Schwan), David Ewert, Paul Tweidt, and three Foundation Trustees—Burgdorf, Boheim, and Raabe. The Trust Instrument empowers the Committee to monitor the Trustees' administration of the Foundation. The Committee may fire existing Trustees with or without cause, hire new Trustees, and request the Trustees to account "with regard to the Trustees' doings" related to the Foundation.

[¶5.] After Marvin's death, the Trustees redeemed all Marvin's stock in the company and funded the Foundation with assets valuing nearly $1 billion. The parties do not dispute that certain investments made by the Trustees over several years caused approximately $600 million in losses to the Foundation. These losses reduced the value of the Foundation's assets and reduced the Foundation's distributions to the Beneficiaries.

[¶6.] According to Committee members Paul and Mark, the Trustees did not inform the Committee until 2013 that the Foundation had experienced such significant losses from the Trustees' offshore investments. Concerned about the Trustees' actions, Paul attended a Trustees meeting to determine why the investments were made, how the losses occurred, and whether the Trustees were negligent and/or breached their fiduciary duties to the Foundation. According to Paul, the Trustees refused to address his concerns.

[¶7.] Paul and Mark continued to seek information from the Trustees, relying on the Trustees' duty under the Trust Instrument to "account" to the Committee related to the Trustees' "doings." In November 2013, the Trustees and Committee held a joint meeting. Prior to the meeting, Paul contacted Boheim. Boheim is both a Trustee and Committee member. Paul asked Boheim to create a meeting agenda that included, among other things, an accounting on the Trustees' investment decisions and actions. According to Paul, the Trustees essentially ignored his requests, and at the meeting, the Trustees provided only short summaries related to the Foundation's investments.

[¶8.] In February 2014, Mark wrote to Committee Chair Ewert to express his continued concerns related to the Trustees' offshore investments and his concern that the Trustees had not provided information related to those investments. Mark included in the letter a list of documents that he asked Committee member Ewert to obtain from the Trustees for an upcoming Committee meeting. On May 8 and 9, 2014, the Committee held a meeting. But, according to Paul and Mark, Committee Chair Ewert and other Committee members whom are also Trustees refused to

address the Trustees' past investment losses or provide the Committee information related to those investments.

[¶9.]     In June 2014, Mark and Paul petitioned the circuit court for instruction and supervision under SDCL 21-22-9.  Paul and Mark asked the court to address whether the Committee had a duty under the Trust Instrument to request an accounting from the Trustees related to the Trustees' investment losses, whether a majority vote of the Committee is required in order to request an accounting, whether the Committee members that are also Trustees have a conflict of interest, whether the Committee has a fiduciary duty to request an accounting, and whether Paul and Mark as individual Committee members may request an accounting.  Paul and Mark also asked the circuit court to take judicial notice of a 2011 circuit court decision by Judge Stuart L. Tiede.  Judge Tiede had issued the decision in a dispute about a Schwan family trust involving many of the same parties.

[¶10.]     The Trustees moved to dismiss Paul and Mark's petition.  They asserted Paul and Mark lacked standing to request supervision and instruction under SDCL 21-22-9.  Prior to the hearing on the Trustees' motion to dismiss, the Trustees, Beneficiaries, and the South Dakota Attorney General requested an abeyance on any hearing for 90 days.  The request came after the Trustees, Beneficiaries, and Attorney General entered into an agreement to allow the Beneficiaries and Attorney General to examine the Trustees' actions.  The Trustees agreed to provide the Beneficiaries and Attorney General detailed information and documentation related to the Foundation's investment losses.  The Beneficiaries and Attorney General agreed to keep the information confidential and to not share

the information with Paul and Mark. The circuit court postponed the hearing. In the meantime, the Trustees, Beneficiaries, and Attorney General prepared a "Settlement Agreement." They conditioned the Settlement Agreement on the circuit court's dismissal of Paul and Mark's petition because they believed that "continued litigation over the June 2014 Petition would be contrary to the best interests of the Beneficiaries and would needlessly waste additional assets." They further asserted that court supervision would "be unnecessary and impractical and would involve unnecessary expense to the Foundation." Paul and Mark refused to sign the Settlement Agreement or dismiss their petition.

[¶11.] In February 2015, the Trustees filed a new motion to dismiss under SDCL 15-6-12(b)(1). The Trustees reasserted that Paul and Mark lack standing under SDCL 21-22-9 and added a claim that the Settlement Agreement rendered Paul and Mark's petition moot. The Beneficiaries and Attorney General joined the Trustees' motion. The circuit court held a hearing on February 23, 2015. At the hearing, the Trustees argued that Paul and Mark do not qualify as beneficiaries or fiduciaries under SDCL 21-22-9. Because only a trustor, fiduciary, or beneficiary as defined in SDCL chapter 21-22 can petition the circuit court for supervision, the Trustees averred that Paul and Mark's petition must be dismissed. Paul and Mark responded that they are fiduciaries because a "fiduciary" is defined in SDCL 21-22-1(3) to include a trust committee and they are part of the Committee. They also argued that they are beneficiaries because SDCL 21-22-1(1) broadly defines a beneficiary as "any person in any manner interested in the trust[.]"

[¶12.] After the hearing, the court gave the parties notice that it intended to treat the Trustees' motion to dismiss as a motion for summary judgment under SDCL 15-6-56 so the court could consider matters beyond those contained in the pleadings. The court gave the parties a reasonable opportunity to present matters relevant to the motion for summary judgment and asked the parties to submit additional briefing. In July 2015, the court issued a memorandum decision and order. It granted Paul and Mark's request that the court take judicial notice of Judge Tiede's 2011 memorandum decision. The court denied the Trustees' motion to dismiss based on the claim that the Settlement Agreement renders Paul and Mark's petition moot. Lastly, the court granted the Trustees summary judgment and entered a judgment denying Paul and Mark's petition because it held that Paul and Mark were not beneficiaries or fiduciaries authorized to bring a petition for supervision and instruction under SDCL 21-22-9.

[¶13.] Paul and Mark appeal, and we restate their issues as follows:

1. Whether the circuit court erred as a matter of law when it interpreted "fiduciary" under SDCL 21-22-1(3) to exclude Paul and Mark.

2. Whether the circuit court erred as a matter of law when it interpreted "beneficiary" under SDCL 21-22-1(1) to exclude Paul and Mark.

3. Whether the circuit court erred in not remanding the case for additional evidence pursuant to SDCL 1-26-34.[1]

---

1. Paul and Mark do not restate or address this issue in their brief, nor cite to or rely on SDCL 1-26-34 in their arguments on the remaining issues. Moreover, SDCL 1-26-34 relates to administrative rules and procedures governing agency proceedings. "We will consider only those issues that the parties actually briefed." *Daily v. City of Sioux Falls*, 2011 S.D. 48, ¶ 10 n.6, 802 N.W.2d 905, 910 n.6. Issues not briefed are waived. *Id.*

[¶14.] By notice of review, the Trustees, Beneficiaries, and Attorney General assert that the circuit court erred in rejecting their claim that Paul and Mark's petition is moot because, under SDCL 55-4-31, the Beneficiaries ratified the Trustees' conduct.[2]

## Standard of Review

[¶15.] We review a circuit court's decision to grant summary judgment de novo. *In re Estate of Cullum*, 2015 S.D. 85, ¶ 8, 871 N.W.2d 655, 657. Similarly, "[q]uestions of statutory interpretation and application are reviewed under the de novo standard of review with no deference to the circuit court's decision." *Argus Leader v. Hagen*, 2007 S.D. 96, ¶ 7, 739 N.W.2d 475, 478.

## Analysis

[¶16.] This appeal does not concern the scope of the Committee's powers under the Trust Instrument related to the Trustees' administration of the Foundation. Nor does this case concern the sufficiency of the Trustees' "accounting" to the Committee on the Trustees' "doings" related to the $600 million in losses on Foundation investments. This case concerns only whether Paul and Mark are authorized to petition the circuit court for supervision and instruction of the trust under SDCL 21-22-9. That statute provides in part that "[a]ny *fiduciary*, trustor, or *beneficiary* of any other trust may, if the trustee is a resident of this state or if any of the trust estate has its situs in this state, at any time petition the circuit

---

2. The Trustees, Beneficiaries, and Attorney General do not brief this issue. Because we consider the issues actually briefed, this issue is waived. *See id.*

court, the county where such petition is to be filed to be determined the same as in the case of a court trust, to exercise supervision." *Id.* (emphasis added). Paul and Mark argue that they are fiduciaries and beneficiaries.

### 1. Fiduciary

[¶17.]    Paul and Mark claim they are fiduciaries as used in SDCL 21-22-9 because a "fiduciary" under SDCL 21-22-1(3) includes a "trust committee, as named in the governing instrument" and they are members of the "Trust Succession Committee" named in the Trust Instrument. Paul and Mark recognize that the majority of the Committee members oppose court supervision. Yet they assert that they are a "trust committee" under SDCL 21-22-1(3) because the Trust Instrument does not mandate that the Committee act only by a majority vote. Moreover, Paul and Mark claim that three of the Committee members have "a blatant conflict of interest" as the Trustees "responsible for the investment decisions that led to the Foundation's $600 million loss."

[¶18.]    The Trustees, on the other hand, argue that the plain language of the phrase "trust committee" does not include Paul and Mark because "[t]hey are merely two members of a seven-member trust committee[.]" The Trustees allege that, under the Trust Instrument, the Committee members take no *individual* action besides voting. The Trustees emphasize that the Committee (five of seven members) opposes Paul and Mark's petition. According to the Trustees, "[i]t would be quite strange if a minority of the [Committee] could force the Foundation into court supervision when the Trust Instrument empowers the [Committee] to act only through majority vote and the majority opposes court supervision."

[¶19.]     Although Paul and Mark have fiduciary responsibilities as Committee members, "fiduciary" under SDCL 21-22-1(3) is specifically defined to mean "a trustee, custodian, trust advisor, trust protector, or trust committee, as named in the governing instrument or order of court." Paul and Mark do not claim they are trustees, custodians, or trust protectors. And the plain language of the phrase "trust committee" does not support that Paul and Mark, individually, constitute a "trust committee" under this Trust Instrument. The Trust Instrument names seven Committee members and empowers the "Committee" to exercise certain powers by a majority vote. Paul and Mark's petition for court supervision is not supported by a majority vote. Moreover, although the Trust Instrument does not specifically require a majority vote before the Committee may request an accounting, the Instrument gives the "Committee" the power to request an accounting, not a Committee *member*. The drafters of the Trust Instrument were aware of the difference between a Committee and a Committee member. This is because the Trust Instrument refers to the Committee *members* individually in regard to the fact that the members shall be free from personal liability. Here, the circuit court did not err when it concluded that Paul and Mark, two members of a seven-member Committee, do not make up the "trust committee, as named in the governing instrument[.]" The result is the same if we remove the three allegedly-conflicted Committee members from our consideration. The remaining two members do not support Paul and Mark's request for court supervision.

[¶20.]     Alternatively, Paul and Mark argue that the circuit court abused its discretion when it did not exercise its equitable powers to recognize Paul and Mark

as fiduciaries.  Paul and Mark direct this Court to the fact that SDCL 21-22-1(3) defines a fiduciary to include, in addition to a trust committee as named in a trust instrument, one named by "order of the court."  They claim the circuit court never decided whether Paul and Mark constitute a "trust committee" in light of equities (the biased Trustees/Committee members, the 2-2 vote of the remaining Committee members).  The Trustees respond that the court "for good reason, declined to use its equitable powers to declare that the Schwans are a trust committee" because a majority of the Committee members oppose court supervision, the Attorney General opposes supervision, and the Beneficiaries oppose supervision.  We decline to address this issue because we conclude that Paul and Mark are beneficiaries under SDCL 21-22-1(1).

### 2.  Beneficiary

[¶21.]      The term "beneficiary" as used in SDCL 21-22-9 includes "any person in any manner interested in the trust[.]"  SDCL 21-22-1(1).  Paul and Mark claim that the Legislature chose to define "beneficiary" broadly so that "any person" interested extends beyond persons with a financial or beneficial interest in the trust.  In Paul and Mark's view, the phrase "in any manner interested" includes "persons with special powers, duties or interests under the governing trust document[.]"  They then emphasize that they are persons interested in the trust because they have duties and powers under the Trust Instrument as Committee members.

[¶22.]      The Trustees, on the other hand, assert that a beneficiary under SDCL 21-22-1(1) includes only those with "a financial interest in the trust, whether it is a

property right in the trust or a claim against the trust." They contend that "[w]ithout limiting beneficiaries to those persons with a financial interest in the trust, the term beneficiary would conceivably cover any person who has any relationship or any self-proclaimed interest in the trust." The Trustees direct this Court to SDCL 55-1-12, SDCL 55-13A-102(2), and SDCL 29A-1-201(4) as proof that the Legislature intended "beneficiary" under SDCL 21-22-29 to mean someone with a financial interest.[3]

[¶23.] The plain language defining "beneficiary" is clear, certain, and unambiguous. A beneficiary under SDCL 21-22-1(1) is any person in any manner interested in a trust. Had the Legislature intended the *manner* interested be financial or beneficial, it could have so indicated just as it did in SDCL 55-1-12, SDCL 55-13A-102(2), and SDCL 29A-1-201(4). Moreover, under our well-settled rules of statutory interpretation, "we may not, under the guise of judicial construction, add modifying words to the statute or change its terms." *City of Sioux Falls v. Ewoldt*, 1997 S.D. 106, ¶ 13, 568 N.W.2d 764, 767 (quoting *State v. Franz*, 526 N.W.2d 718, 720 (S.D. 1995)). Nor will we declare the intent of the statute based on what we thought the Legislature meant to say. We are "bound by the actual language of applicable statutes" and "assume that statutes mean what they

---

3. In SDCL 55-1-12, "beneficiary" is defined as "a person that has a present or future beneficial interest in a trust, vested or contingent." *Id.* Under SDCL 55-13A-102(2), a beneficiary includes "in the case of a trust, an income beneficiary and a remainder beneficiary[.]" And, under SDCL 29A-1-201(4), a beneficiary of a trust "includes a person who has any present or future interest, vested or contingent, and also includes the owner of an interest by assignment or other transfer[.]"

say and that the legislators have said what they meant." *State v. Bordeaux*, 2006 S.D. 12, ¶ 8, 710 N.W.2d 169, 172 (quoting *Crescent Elec. Supply Co. v. Nerison*, 89 S.D. 203, 210, 232 N.W.2d 76, 80 (1975)).

[¶24.]     This does not mean that any member of the public or any person with a self-proclaimed interest will be able to obtain court supervision.  Here, Paul and Mark have a fiduciary responsibility to the Foundation as members of the Committee created by the Trust Instrument to oversee the Foundation.  Because Paul and Mark are persons in any manner interested in the Trust as members of this Trust-created Committee, the circuit court erred when it granted summary judgment and dismissed Paul and Mark's petition.

### 3.  Good Cause to the Contrary

[¶25.]     The Beneficiaries and Attorney General alternatively ask this Court to affirm the circuit court's decision because, in their view, the circuit court had good cause as a matter of law under SDCL 21-22-9 to deny court supervision.  They assert, "Where the beneficiaries of a charitable trust—the only parties injured by alleged breaches of fiduciary duty or other conduct—have released the trustees pursuant to a settlement agreement drafted by the Attorney General following his independent review, there is little point to individual members of the [Committee] prolonging an expensive and quixotic quest to reopen and litigate what has already been resolved.  No additional effectual relief could be gained by the trust's beneficiaries from continued litigation."  Paul and Mark respond that the Beneficiaries did not raise this argument to the circuit court and that the circuit court did not hold a hearing on the merits under SDCL 21-22-9 because it dismissed

their petition. They further claim that "[a]n agreement specifically designed to conceal information from the [Committee] regarding the Trustees' responsibility for the Foundation's $600 million losses does not constitute *good cause* for dismissing the Schwans' Petition."

[¶26.]    From our review of the court's decision, the court did not conclude that the Trustees, Attorney General, or Beneficiaries established good cause to the contrary related to the merits of Paul and Mark's petition. The court did not hold a hearing on the merits of Paul and Mark's petition. In fact, the court identified that it would not address arguments raised by the Trustees or Paul and Mark because it concluded that Paul and Mark did not meet any classification entitled to seek court supervision under SDCL 21-22-9. On the record before us, we cannot say as a matter of law that the Trustees, Attorney General, or Beneficiaries have established good cause to the contrary. Because we hold that Paul and Mark are entitled to petition the circuit court to exercise supervision and instruction under SDCL 21-22-9, the circuit "court shall fix a time and place for a hearing thereon, . . . and upon such hearing, enter an order assuming supervision unless good cause to the contrary is shown."

[¶27.]    Reversed and remanded.

[¶28.]    GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.